**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ronald Arthur OFSHE, Defendant-Appellant.**

No. 86–5351.

United States Court of Appeals, Eleventh Circuit.

June 1, 1987.

Mel Black, Miami, Fla., for defendant-appellant.

Leon B. Kellner, U.S. Atty., Neil Karadbil, Sonia O'Donnell, David O. Leiwant, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT and VANCE, Circuit Judges, and ATKINS *, Senior District Judge.

ATKINS, Senior District Judge:

After entering a conditional plea of guilty, Ofshe appealed from an order denying his motion to dismiss the Indictment and an order denying his motion to suppress evidence. We find that (a) appellant's constitutional rights were not violated by the government's misconduct, and (b) the motion to suppress was properly denied. Thus, we AFFIRM.

## I. STATEMENT OF FACTS

On or about December 2, 1982, Agent Sternaman, Drug Enforcement Administration (DEA), applied to the Honorable Norman Roettger for a warrant to search the premises at 2216 S.W. 60th Terrace, Miramar, Florida.[1] Upon review, Judge Norman C. Roettger issued the warrant; unfortunately, it was also directed "To Honorable Norman C. Roettger, United States District Judge," and commanded him to search the premises within 7 days. On December 3, 1982, federal agents executed a search based upon this warrant at 2216 S.W. 60th Terrace, Miramar, Florida, and found four and one-half pounds of cocaine in a safe located in appellant's office. Along with the cocaine, the agents found other drugs and certain documents which detailed appellant's drug trafficking. In addition, the agents found other evidence, outside the safe, throughout the office.

Agent Sternaman had no direct knowledge or information regarding any illegal activities on the premises. Instead, he relied upon information supplied to him by another agent, Special Agent Thomas L. Chapman, who worked for the North Carolina Office Bureau of Alcohol, Tobacco & Firearms (ATF). Like Sternaman, Agent Chapman had no direct knowledge of any illegal activities. Rather, this agent obtained information from an unnamed informant who informed Chapman that he had obtained an unspecified amount of cocaine from an unspecified person in an unspecified manner from an office inside the premises on an unspecified date.

Agent Sternamen's application for a search warrant failed to inform Judge Roettger that the confidential informant had six prior convictions and was incarcerated and awaiting trial on charges of conspiracy to traffic methaqualone. The government later disclosed the identity of the confidential informant, Junior Gambill, when he was to be utilized as a witness. This disclosure included a recitation of his prior felony convictions.

In December, 1982, appellant Ofshe was arrested in Miramar, Florida, for possession with intent to distribute cocaine. He retained the services of Mel Black, Esquire, who handled the bond hearing, arraignment, initial discovery review and the preparation of a motion to suppress. Mr. Black still represents Ofshe.

In February, 1983, Ofshe retained Marvin Glass, Esquire, to act as co-counsel, and informed Black of his decision. Glass indicated that he would handle all communications with the government, including plea negotiations, and that Black would prepare the case for trial, and would investigate and file appropriate motions. This break-

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation

1. After the warrant was issued, the agents learned that the premises were subdivided into separate offices containing unrelated businesses. However, all seven of the rooms shared a common entrance, a common receptionist, and a central mail delivery. Only one room was used by a tenant other than Fed-Aire or Appliance King. Moreover, the telephone in Ofshe's office was subscribed to by Fed-Aire of Florida, the business described in the search warrant.

down of duties was confirmed in a meeting between Black and Glass in March, although Black remained sole counsel of record until July 1, 1983.

Thereafter, while still acting as counsel for Ofshe, Glass contacted the United States Attorney's Office in Chicago, Illinois, and learned he was a target of the "Greylord"[2] investigation. Being keen to diminish his own criminal responsibility, Glass offered to provide information to and cooperate with the government in identifying and investigating suspected drug traffickers. Therefore, Glass periodically met with Assistant U.S. Attorney (AUSA) Turow to provide useful information about certain alleged criminal activities.

Later, on June 8, 1983, Glass mentioned Ofshe as a possible target during a meeting with Turow. When Glass indicated that he was currently representing Ofshe in Fort Lauderdale, Turow warned him not to reveal any privileged attorney-client conversations but encouraged him to proceed as an informant. Glass then began to detail activities regarding certain individuals, whom he had met through Ofshe, who discussed a money laundering scheme. In addition, Glass told AUSA Turow about Ofshe's request that Glass find a buyer for "a ton of marijuana."

AUSA Turow sought and received permission to place a Nagra body bug on Glass and conduct an electronic surveillance of the conversations between Glass and his client. These conversations included some unplanned discussions about his Florida case including the timing and likelihood of success of the motion to suppress. This electronic surveillance was done with Glass' consent while acting as Ofshe's attorney and as a "cooperating individual" for the government. To guard against improper conduct, AUSA Turow testified that the agents installing and monitoring the body tape were given very strict guidelines

to instruct Glass not to violate any attorney-client privilege.[3]

Glass, of course, was not told at the time of the electronic surveillance that he had to withdraw from representation of Ofshe. Indeed, Glass was not told to withdraw for several months. Eventually, however, he was told to withdraw, but the United States Attorney did nothing to confirm his withdrawal or otherwise determine the status of the case. Significantly, the government did not file a motion to disqualify Glass or take any other action to inform the defendant of the conflict of interest, although it was aware of the conflict since June 8, 1983. Thus, the government allowed the ineffective representation to continue for over 10 months.

In February, 1984, Judge Gonzalez, who was presiding over Ofshe's case, learned that Glass had been enlisted as an informant against his client and ordered the United States Attorney to disclose this fact to the defendant. Glass appealed Gonzalez's decision and did not move to withdraw until April, 1984. Even then he continued to hide the fact that he was working as an informant, with governmental consent, until February, 1985. Since the court file was sealed, defendant Ofshe could not discover the reasons for Glass' withdrawal or about the appeal taken by Glass.

Although Black was prepared for trial in April of 1983, Glass instructed him to file a motion for continuance which was to include a waiver of speedy trial. Later, the day after Glass began giving information to the United States Attorney in Illinois, Glass had Ofshe execute a written formal waiver of speedy trial. At Glass' instructions, additional continuances and waivers of speedy trial were filed in May and June, 1983. Nevertheless, by July, 1983, both sides had announced at calendar call that they were ready for trial.

On June 28, 1983, the parties appeared at court before Judge Gonzalez for the actual

**2.** Operation "Greylord" refers to a federal investigation of corruption within the Cook County Circuit Court. *Chicago Courts Reel From Corruption Probe,* The National Law Journal, March 2, 1987, at 1, Col. 1.

**3.** The monitored conversation was conducted without approval of the United States Attorney's Office or the United States District Court in Miami, Florida.

trial. On that day, AUSA Hursey advised that he needed a few days to locate his witnesses. Glass and Hursey then left the courtroom and went into a private conference without the presence of Ofshe or Black. During their private meeting, Glass convinced Hursey to dismiss the Indictment based on Glass' representation that Ofshe would cooperate and provide the information. Glass further offered to waive reindictment and allow the government to file charges by Information. Subsequently, Hursey returned to the courtroom and moved for dismissal of the Indictment without prejudice. The motion was granted by the court.

As Glass, Ofshe, Black, and private investigator David Waters were leaving the Courthouse, they discussed various matters which required legal attention since Ofshe's case had been dismissed. Glass stated he would secure all property originally seized or given to secure the personal surety agreement, including an automobile that was in forfeiture. Based on that representation, Black did no further work on the forfeiture proceeding.

Later, the government reinstituted criminal proceedings against Ofshe. In August, 1983, Black received a Notice of Arraignment on an Information and called Glass who told him that would take care of it. Black then prepared a motion to dismiss the Information, but did not file it because Hursey told him that Glass had agreed to waive the filing of an Indictment.

Black testified he next appeared on December 9, 1983 at a sounding of the case for trial. He then spoke to Glass who told Black he would have another attorney appear at court. Neither Glass nor any other attorney appeared. Fortunately, the case was taken off the calendar and continued through February, 1984.

In February, 1984, the defense announced they were ready for trial, however, the case was not set for trial until March, 1985. Ofshe did not request any continuances from January, 1984 until March, 1985. His request for continuance from the March, 1985 trial setting was based upon problems in reassembling the dormant file, locating missing witnesses, discovering and investigating the reasons for Glass' *in camera* appeal from Gonzalez's order, and researching the grounds for the motion to dismiss.

Black first learned, on February 16, 1985, through a letter from Chief Assistant United States Attorney Joseph McSorley that Glass was a government informant and had worn a body bug during his conversations with his client, Ronald Ofshe, on June 14, 1983. Naturally, Black was concerned. Ofshe was also concerned.

AUSA Turow testified in detail about the procedures employed to assure there would be no violation of any attorney-client privilege. He stated that he and his superiors discussed the matter fully as soon as they learned that Ofshe's counsel, Glass, was "keen on diminishing his criminal responsibility" and wanted to become a "cooperating individual," and was willing to provide information regarding Ofshe's criminal activities. Turow also testified that by June 10, 1983, the United States Attorney in Illinois had given government agents very strict instructions that Glass was to follow based on the attorney-client privilege. The agents were to transmit these guidelines to Glass.

Apparently, as the agents were wiring Glass for his undercover conversation with Ofshe, Glass said that the case against Ofshe had been dismissed. After June 1983, contact between Glass and the United States Attorney's Office in Illinois was sporadic, but in August of 1983 Glass told the agents that the case had been reinstated and that he still represented the defendant. At this time, Turow felt obliged to inform the United States Attorney in the Southern District of Florida of the situation. However, the United States Attorney for the Southern District of Florida and his chief assistants decided not to reveal these matters to the prosecutor, Hursey.

## II. DISCUSSION

Although appellant relies upon several independent theories to challenge his conviction, this appeal generally concerns two. First, was the search warrant properly is-

sued and executed? Second, does the government's use of a criminal defense attorney as an informant warrant the reversal of appellant's conviction?

### A. *The Search Warrant*

#### 1. *The Sufficiency of the Application for the Search Warrant*

Ofshe argues that the agents omitted critical information from the search warrant application. Specifically, the application for the search warrant did not mention the criminal record of the informant nor did it state that he was in federal custody when the purchase of cocaine was made at the premises to be searched. Ofshe argues that these omissions were "either intentional or with reckless disregard for the truth." For these reasons, he urges that doubt is cast on the existence of probable cause, and that the district court should have invalidated the search warrant.

Appellant overlooks the critical fact that the search warrant affidavit was based on the personal observations of a reliable informant. When Agent Chapman communicated the informant's observations to Agent Sternaman, the affiant, Chapman, described the informant as a proven, reliable informant who had furnished valuable information on at least 14 occasions during the past twelve years. On each occasion, an arrest and/or seizure occurred. The informant stated that he had been in the office in question at least once a month for the previous three years and that he had observed cocaine in one or both of the two safes on each occasion. The informant further stated that, sixteen days before (November 16, 1982), he had observed a multi-kilogram quantity of cocaine in a safe located at the address in question and had obtained cocaine from Ofshe for his own use.

 Insignificant and immaterial misrepresentations or omissions will not invalidate a warrant. *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Before issuing a search warrant, the judge must "make a practical, common sense decision ..., given all the circumstances set forth in the affidavit ..., [that]

there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1982). The reviewing court must then examine the situation and determine that the issuing judge "had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* at 238–39, 103 S.Ct. at 2332–33 *(quoting Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). Here, it was the past, credible dealings over a twelve year period with Agent Chapman. In addition, the informant's statements were based on his personal knowledge. He recited having received cocaine from Ofshe for his personal use. This fact, combined with this further statement that he had seen cocaine in Ofshe's safes once a month for the previous three years, told the district court enough about the informant's background. Therefore, the omission of the informant's criminal convictions and incarceration, when considered with all the information contained with the application, does not invalidate the warrant. *See United States v. Harrington,* 761 F.2d 1482, 1484–85 (11th Cir.1985); *United States v. Strauss,* 678 F.2d 886, 893 (11th Cir.), *cert. denied,* 459 U.S. 911, 103 S.Ct. 218, 74 L.Ed.2d 173 (1982).

#### 2. *The Failure to Direct the Warrant to a Civil Law Enforcement Official and its Issuance by the Same Person Designated to Execute the Warrant*

Ofshe argues that the search warrant was invalid because it was issued by and directed to the Honorable Norman C. Roettger, United States District Judge, for execution. Ofshe also asserts that the warrant violated the Constitutional requirements of the Fourth and Fifth Amendments because Judge Roettger was not a "neutral and detached magistrate." We disagree.

 The designation of the issuing judge to execute the warrant was obviously inadvertent. A search warrant can be executed by the person to whom a warrant is directed or to any officer authorized by law

to execute search warrants. *United States v. Martin*, 600 F.2d 1175, 1181–82 (5th Cir. 1979). Federal agents, including the affiant, DEA Agent Robert Sternaman, executed the warrant. The defect in the search warrant was a mere technicality and does not require this court to invalidate the warrant. *See United States v. Soriano*, 482 F.2d 469, 478–80 (5th Cir.1973), *modified in other respects*, 497 F.2d 147 (1974) *(en banc); see also United States v. Burke*, 517 F.2d 377 (2d Cir.1975). The errors assailed were those of form, not of substance. Thus, the district court was correct in holding that these defects did not invalidate the warrant.

### 3. *Description of Premises*

■ "The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons to be seized.'" *Maryland v. Garrison*, ⸺ U.S. ⸺, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72 (1987). In this case the "premises" which were to be searched were described in the search warrant as:

> Appliance King, Division of Fed-Air of Florida, Inc., located at 2216 S.W. 60th Terrace, Miramar, Florida, a two-story concrete, and masonry building, white in color, and its contents, including two safes, each being four feet by four feet.

Appellant contends that this description was insufficient, and that the district court should have voided the warrant because it named only one business located in a multiple use commercial building. Again, we disagree.

> An erroneous description of premises to be searched does not necessarily render a warrant invalid. The Fourth Amendment requires only that the search warrant describe the premises in such a way that the searching officer may "'with reasonable effort ascertain and identify the place intended.'"

*United States v. Burke*, 784 F.2d 1090, 1092 (11th Cir.1986) (citation omitted).

The district court found that the agents learned only after the warrant was issued that the premises described in the warrant were subdivided into separate offices and the record supports this conclusion. Although the agents had looked at the outside of the building on December 2, 1983, they did not actually enter the building until December 3, 1983, when they executed the warrant. The layout of the office space supports the agents' confusion. Of the seven offices in the building, six were used by Fed-Aire, Appliance King or appellant. Only one office was used by a separate business. When the agents executed the search warrant, they found that there was a single, locked entrance to the premises. The locked door was controlled by a single receptionist, who answered the telephone for all the offices. The mail was also received centrally and distributed to each office. Thus, the agents reasonably believed, until they entered the premises, that the office space belonged solely to Appliance King/Fed-Aire. Moreover, during the search, there appeared to be a connection between Ofshe and Wayne Steinberg, who identified himself to the agents as the owner of the building.[4]

In the final analysis, the agents followed exactly the authority of the warrant in that they searched only the two safes and the Appliance King Division of Fed-Aire of Florida, Inc. premises. Their actions were reasonable. Thus, we cannot invalid the warrant for the reason presented. *See e.g., Garrison*, 107 S.Ct. at 1019.

### B. *The Government's Use of Criminal Defense Counsel as an Informant*

Ofshe asserts that he was prejudiced by the invasion of his attorney-client relationship. He also vehemently argues that the government's conduct in this case was so utterly outrageous that it warrants dismissal of the Indictment. Because of the gravity of this situation, we have carefully examined appellant's serious contentions.

---

**4.** When the agents entered appellant's office, they found that the safes mentioned in the warrant were locked. The agents called a locksmith to drill open the safes. When the locksmith arrived, he asked Steinberg to save him a lot of work and give the agents the combination to the safes. Steinberg told the locksmith not to talk to him and walked away.

### 1. *The Invasion of the Attorney-Client Privilege*

Ofshe forcefully argues that his expectation of privacy was violated and his attorney-client privilege was invaded; therefore, he insists that his Indictment should have been dismissed. He argues that he was generally prejudiced because the government encouraged Glass to act in his own interest at the expense of his client, creating an obvious conflict of interest. More specifically, he points out that the government placed a body bug on his attorney and surreptitiously monitored a conversation which included discussion concerning future criminal activity and discussions regarding his pending court case.

Ofshe insists that the infringement of his attorney-client privilege or his right to counsel automatically requires the dismissal of his Indictment. Yet, in *United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981), the Supreme Court squarely held that absent demonstrable prejudice, dismissal was plainly inappropriate as a remedy for such a Sixth Amendment violation. Here, we find no demonstrable prejudice.

██ During the recorded conversation, the only information related to the pending case concerned the motion to suppress which was part of this public record. No additional specific facts in the case or strategic decisions were discussed. In fact, Ofshe's verbatim recital in his brief confirms this conclusion. Significantly, nothing pertinent to the Florida case was communicated to the United States Attorney assigned this case. Thus, since no information was furnished AUSA Hursey as a result of the intrusion, no Sixth Amendment violation occurred. *Weatherford v. Bursey*, 429 U.S. 547, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977).

██ Other cases emphasize the fact that a defendant must be prejudiced before an Indictment may be dismissed. For example, *United States v. Melvin*, 650 F.2d 641 (5th Cir.1981) is instructive. There, the court reversed a district court order dismissing an Indictment because of a government informant's attendance at meetings between defendant and his counsel at which defense strategy had been discussed. The *Melvin* court held that the district court could not dismiss the Indictment without first finding that the intrusion into appellee's attorney-client relationship had prejudiced the ability of appellee's attorneys to provide adequate representation or otherwise prejudiced his defense. If prejudice was found, the district court was ordered to make a determination as to whether some other remedy short of dismissal could be tailored to vindicate appellee's Sixth Amendment right to counsel and a fair trial.

In *United States v. Sander*, 615 F.2d 215 (5th Cir.), *cert. denied*, 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980), police officers examined an attorney's confidential files on defendant's case following the attorney's murder. No injury or prejudice resulted because nothing in the file was utilized by the prosecution. Therefore, the court in *Sander* held that the appropriate remedy for such an intrusion is to suppress any evidence unlawfully obtained, rather than dismiss the case. *Sander*, 615 F.2d at 219.[5]

We reiterate and emphasize that Ofshe suffered no prejudice as a result of the taped conversation. The taped conversation produced no tainted evidence, and the intrusion into any potentially privileged attorney-client matters was not purposeful. In short, no information was provided to the prosecuting attorney. Similarly, while Ofshe claims that he was also prejudiced by waiving, at Glass' direction, his right to dismissal under the Speedy Trial Act, he overlooks the fact that original and supplemental motions to suppress and other motions were filed in his behalf by Black which tolled the running of the speedy trial clock until they were heard. *See Henderson v. United States*, —— U.S. ——, 106 S.Ct. 1871, 1874, 90 L.Ed.2d 299 (1986).

---

**5.** Here, the issue of suppression is irrelevant as none of the statements recorded was to be used to prove the government's case.

Likewise, the government stipulated to the testimony of any unavailable defense witnesses. Finally, we note that appellant was not prejudiced in this case because Black had no conflict of interest and provided zealous representation at all times after prosecution was initiated. Regardless of Glass' poor performance, Black was not prevented from acting in Ofshe's best interest. Thus, we hold that the district court properly denied Ofshe's Motion to Dismiss.

### 2. *Outrageous Government Conduct Claim Under the Fifth Amendment*

▮ Ofshe argues that the government's conduct in invading the communications between him and Glass was so outrageous that it violated his Fifth Amendment due process rights. *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). To constitute a constitutional violation the law enforcement technique must be so outrageous that it is fundamentally unfair and "shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment." *Russell* at 432, 93 S.Ct. at 1643. In determining whether such conduct exists, the "totality of the circumstances" must be considered "with no single factor controlling." The defense is to be invoked only "in the rarest and most outrageous of circumstances." *United States v. Haimowitz,* 725 F.2d 1561, 1577 (11th Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984), *quoting United States v. Tobias,* 662 F.2d 381, 387 (5th Cir.1981), *cert. denied,* 457 U.S. 1108, 102 S.Ct. 2908, 73 L.Ed.2d 1317 (1982). *See also United*

*States v. Mulherin,* 710 F.2d 731, 735 (11th Cir.1983), *cert. denied,* 464 U.S. 964, 104 S.Ct. 402, 78 L.Ed.2d 343 (1984). Moreover, in *Hampton,* the court indicated that ... a demonstrable level of outrageousness warranting dismissal would be especially difficult to show in contraband offenses "which are so difficult to detect in the absence of undercover government involvement." *Hampton* at 495 n. 7, 96 S.Ct. at 1653 n. 7.

▮ After considering the totality of the circumstances presented in this case, we hold that the actions of the government were not so outrageous as to "shock the universal sense of justice." Therefore, the district court's denial of the motion to dismiss is affirmed. In reaching this decision, however, we must stress two points. First, our holding is based upon the unique facts of this case. Second, we do not condone the government's use of criminal defense attorneys as informants against their clients.[6]

The facts show that the investigation was initiated by the Chicago office and that no evidence was provided to the Miami Assistant U.S. Attorney prosecuting Ofshe. Glass' offer to help the Chicago office was designed to obtain information regarding Ofshe's subsequent criminal conduct and not used to discover defense strategy in the Florida case. Therefore, the invasion of the attorney-client relationship produced *no evidence against Ofshe.* More importantly, because Black provided zealous representation, Ofshe *was not prejudiced in his defense.* Had there been demonstrable evidence of prejudice, we would be compelled to reverse.[7]

---

6. While we have not found the government's conduct sufficiently outrageous to warrant the dismissal of his Indictment, we do believe that Glass' and Turow's conduct was reprehensible. Because the district judge is more familiar with the attorneys' conduct, we assume he will refer this matter to The Attorney Registration and Disciplinary Commission, 203 N. Wabash, Suite 1900, Chicago, Illinois 60601, for appropriate action.

7. In addition, appellant, argues that he was also prejudiced by "waiver of forfeiture proceedings"

and "change in precedents concerning search and seizure." We agree with the magistrate in the Review and Recommendation, affirmed and adopted by the district court:

The defendant's allegations concerning waiver of forfeiture proceedings and change in precedents relating to search and seizure are without merit. The forfeiture issue is not relevant to this case and a change in precedents is speculative and fails to set forth sufficient reasons to support dismissal.

### III. CONCLUSION

Several aspects of this case concern us. The evidence against Ofshe should have been easily obtained. Instead, the bungled search warrant procedures created unnecessary difficulties. Furthermore, the conduct and judgment exhibited by some of the attorneys were questionable at best. Yet, the conduct at trial, by Black, Hursey, and Judge Gonzalez, was quite credible and ensured that Ofshe was provided with a fair trial.

After reviewing the law and applying it to the unique facts presented in this case, we find that the district court correctly denied the motion to suppress and the motion to dismiss. Therefore, WE AFFIRM.