[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 3, 2008
THOMAS K. KAHN
CLERK

No. 07-10283
Non-Argument Calendar
_____

D. C. Docket No. 06-20456-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHELLE JOHNSON,
a.k.a. Michelle Felder,
ISAAC JOHNSON,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 3, 2008)**

Before ANDERSON, BIRCH  and HULL, Circuit Judges.

PER CURIAM:

Isaac Johnson ("Isaac") and Michelle Johnson ("Michelle") appeal their convictions for: conspiracy to possess with intent to distribute narcotics, 21 U.S.C. § 846; possession with intent to distribute narcotics, 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(1)(D); possession of a firearm in furtherance of a drug-trafficking crime, 18 U.S.C. §§ 924(c)(1)(A) and (2); being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(e), and (2); and being a felon in possession of body armor, 18 U.S.C. § 931. On appeal, both Isaac and Michelle argue that: (A) the district court erred by denying their motion to suppress evidence obtained during the execution of a search warrant because the warrant violated the particularity requirement, and because the information contained in the supporting affidavit was stale; and (B) the evidence was insufficient to sustain their convictions. In addition, Isaac individually argues that (C) the district court erred by admitting hearsay statements of a confidential informant who failed to testify at trial.

Upon review of the record and the parties' briefs, we discern no reversible error. Accordingly, we AFFIRM.

## I. <u>BACKGROUND</u>

A federal grand jury returned a ten-count indictment against Isaac, Michelle, and Hermona Butler. Count One charged all three defendants with conspiracy to possess with intent to distribute cocaine, cocaine base, and marijuana, in violation

2

of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), and (b)(1)(D). Count Two charged Isaac with possession with intent to distribute cocaine on 10 November 2005 in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Count Three charged Isaac and Butler with possession with intent to distribute cocaine on November 15, 2005, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2. Counts Four and Five charged all three defendants with possession with intent to distribute cocaine and cocaine base, respectively, on 1 December 2005 in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2. Count Six charged all three defendants with possession with intent to distribute marijuana on December 1, 2005, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), and 18 U.S.C. § 2. Count Seven charged all three defendants with possession of a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. The indictment listed three firearms: a .38 caliber Colt revolver, a 9mm caliber Beretta pistol, and a 9mm caliber UZI rifle. Count Eight charged Isaac with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(e), and 2. In addition to the three firearms listed above, the indictment also listed ammunition in this count. Listing the same firearms and ammunition, Count Nine charged Michelle and Butler with being felons in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 2. Finally, Count Ten charged Isaac and

3

Michelle with being felons in possession of body armor, in violation of 18 U.S.C. § 931. Butler entered a written plea agreement with the government and is not a party to this appeal.

Michelle filed a motion to suppress all items seized pursuant to a search of the premises located at 1475-1479 NW 3rd Avenue in Miami, Florida. R1-46, 47. The basis of the motion was twofold. Relying heavily on Maryland v. Garrison, 480 U.S. 79, 107 S. Ct. 1013 (1987), Michelle first argued that the search warrant violated the particularity requirement of the Fourth Amendment because it contained inaccurate and misleading information with respect to the place to be searched. Specifically, Michelle asserted that the affidavit in support of the warrant inaccurately described the building at 1475-1479 NW 3rd Avenue as a single apartment with multiple rooms, when in reality, the top floor of the building contained three different apartments at 1475, 1477, and 1479 NW 3rd Avenue. Michelle stated that this fact should have been known to the affiant because the front entrance of the building – including three mailboxes – clearly showed the existence of three separate apartments at these addresses. Michelle also suggested that the affiant either was extremely careless or deliberately misleading because only pictures of the rear of the building were attached with the affidavit, whereas a

4

picture of the front of the building would have demonstrated the existence of three separate apartments.

Second, Michelle argued that the information contained in the affidavit was stale. She observed that the affidavit generally described 2 drug transactions involving a confidential informant ("CI") that took place 15 and 20 days before the search warrant was issued. Michelle asserted that the staleness of this information was exacerbated by the fact that the affidavit failed to provide information about precisely where the transactions took place in the building, the reliability of the CI or his relationship with the seller, a description or identification of the black male seller or black female who met the CI at the building, whether it was the same seller in both transactions, and who resided in the apartment building. Based on those alleged problems, Michelle argued that the affidavit did not contain sufficient information to establish probable cause. Upon request, the court permitted Isaac to adopt Michelle's motion as his own.

At the suppression hearing, the district court found that the warrant was stated with particularity, stating:

> When you take into consideration what was available at that time together with what the confidential informant advised them. Even knowing today all these things, I would still say that even in hindsight, which I think is a tougher test in a way, I would say it's not only supported by probable cause. . . . But also stated with particularity.

5

And it is my view having seen the evidence that was presented to [the judge] that had I seen that I would have done exactly what he did. How the premises were described with particularity. Because in fact it was one unit or one premise or one apartment, whatever you want to say, consisting of numerous rooms.

If you are going to describe separate apartments. Let's say 1475, I don't think you would describe that as an area with numerous rooms. I think the only way you get to numerous rooms is the whole upstairs. And then you tied in with what the confidential informant said and how he described these two purchases. One on one side, at one part of the building, one at the other part of the upstairs of the building. That appears to me that the whole facility was being used a retail drug outlet place, with all the guns and things of that nature that was seen. Plus you got a spotter sitting up there on the outside . . . .

R8 at 92-93. The district court found that, while there may have been three apartments upstairs at one time, as confirmed by an appraisal, in November 2005 the upstairs area was being used as one apartment unit consisting of a number of rooms, as provided in the affidavit. Id. at 95. Defense counsel countered that the affidavit never expressly explained the issue with respect to there being three separate apartments, and the court disagreed, reiterating that the premise of the affidavit was that the upstairs was one single apartment and the court found there to be sufficient evidence to support that premise.

In regard to the staleness issue, the court found that, while there was no particular formula, the evidence was not stale because a number of cases involved substantially greater lapses in time. In this respect, the court noted that there were

6

only "nine or ten effective work days" that had passed in this case. Id. at 102. Additionally, the court found that the nature of the crime indicated that there was an ongoing drug conspiracy that would not relocate after 15 days. Importantly, the sellers were selling small quantities, the two transactions occurred over a five-day period, and the operation was not a multi-kilo operation that could afford to relocate, but was one that needed a semi-permanent location in order for the customers to find it. The court entered an order denying the motion for the reasons stated at the hearing. R1-73.

After the presentation of evidence at trial, Isaac and Michelle renewed their earlier Rule 29 motions based on insufficient evidence. R12 at 59-60. With respect to Isaac's motion, the government responded that a police officer saw Isaac controlling the door to the second floor of the apartment during the two controlled buys, Isaac was arrested at that location during the execution of the warrant, a SWAT officer testified that Isaac was within hand's reach of a big bag of cocaine and two firearms, and there was other documentary evidence linking him to narcotics and the bullet-proof vest. The court agreed with the government, finding the evidence sufficient to take the case to the jury. Id. at 60-61. With respect to Michelle's motion, the government pointed out that Florida Power and Light bills were in her name and that she was present in room "A" next to the guns and drugs

7

during her arrest. Defense counsel responded that Michelle was not charged with providing a dwelling as a narcotics distribution point – a separate federal offense – and there was no evidence that she was involved in narcotics distribution, but was merely living at the premises and paying the utilities. The court denied the motion with respect to Michelle and stated:

> I think it's a little tougher case, but I think if you look at the videos and photographs it's pretty obvious the place, in my view the whole of the second floor, was being used as a repository for illegal drugs.
>
> You would have to be totally incapable – your senses would have to be totally shut down to not know this was a very active drug operation. This is not a situation where it was not open and obvious to everyone.
>
> Add to that the documentary evidence as to her being the one that paid the utilities, I think the reasonable inferences are sufficient for a jury to find she was involved in each of these crimes.
>
> I guess there could be an argument this was a mere presence, but I don't think it carries the day because of what was shown in the photographs and video. There were drugs [everywhere], including under what appears to be a child's bed or between the mattress and the box spring. I think I gave my opinion as to how this was used as one unit.

Id. at 62-63. The jury returned a guilty verdict on all counts against Isaac and Michelle. Id. at 117-18; R2-85, 86.

8

## II.  DISCUSSION

**A.**   **Whether the district court erred by denying the motion to suppress evidence found during the execution of a search warrant on the grounds that the search warrant violated the particularity requirement, and that the information forming the basis of the probable cause determination was stale**.

Isaac argues that the court erred by denying his motion to suppress for two reasons.  First, he argues that the search warrant violated the particularity requirement of the Fourth Amendment because it inaccurately described the place to be searched as one apartment rather than three separate apartments.  Relying on Maryland v. Garrison, 480 U.S. 79, 107 S. Ct. 1013 (1987) and United States v. Ofshe, 817 F.2d 1508 (11th Cir. 1987), he argues that an examination of the front entrance of the building, the three mailboxes, and the public records  should have made the affiant aware that there were three apartments, and this information should have been disclosed in the affidavit.  Second, he argues that the information supporting the search warrant was stale because it was based on two drug transactions that occurred more than two weeks earlier and which were not described in detail.

Michelle contends that the court erred by confounding the particularity requirement and the probable cause requirement because they are legally and factually distinct.  She then essentially repeats Isaac's argument that the search

warrant lacked particularity. She notes that, to the extent the court found that there were not three separate apartments, this factual finding was clearly erroneous.

"A ruling on a motion to suppress presents a mixed question of law and fact. We review the district court's findings of fact for clear error and its legal conclusions de novo. All facts are construed in the light most favorable to the party prevailing below." United States v. Virden, 488 F.3d 1317, 1321 (11th Cir. 2007) (citations omitted).

### 1.    The Particularity Requirement

The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.' The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

Garrison, 480 U.S. at 84, 107 S. Ct. at 1016.

In Garrison, the Court addressed a situation where the police obtained a search warrant to search a third-floor apartment, believing that there was only a single apartment on the third floor. 480 U.S. at 80, 107 S. Ct. at 1014. In fact, there were two apartments on the third floor, and the police, in executing the search warrant, conducted a search of the second apartment before discovering that it was

10

a separate apartment.  Id.  Acknowledging that the search warrant's description of the place to be searched was broader than appropriate, the Court addressed whether the warrant violated the particularity requirement:

> Plainly, if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor . . . , they would have been obligated to exclude respondent's apartment from the scope of the requested warrant.  But we must judge the constitutionality of their conduct in light of the information available to them at the time they acted.  . . .  The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate.

Id. at 85, 107 S.Ct. at 1017.  Concluding that the warrant was issued validly, the Court accepted the unanimous conclusion of the state courts that the affiant reasonably believed that there was only one apartment on the third floor.  Id. at 86 n.10, 107 S. Ct. at 1017 n.10.  Although the affiant may have been able to ascertain that there was more than one apartment because the building contained seven separate units, the record revealed that the affiant physically went to the location and matched it with the description given to him by an informant, checked with the electric company and discovered that there was one subscriber on the third floor, and, using police records, confirmed that the subscriber's address and physical description matched the one provided by the informant.  Id.

In Ofshe we addressed the validity of a search warrant that targeted one company located in "multiple use commercial building."  817 F.2d at 1514.  After

11

agents executed the warrant, they discovered for the first time that the premises was subdivided into seven offices, six of which were used by the company named in the warrant. Id. We upheld the validity of the warrant because the layout of the office space supported the agents' belief that all seven units were used by the target company. Id. In addition to the fact that only one of the seven offices was used by a separate company, "there was a single, locked entrance to the premises . . . . controlled by a single receptionist who answered the telephone for all the offices. The mail was also received centrally and distributed to each office. Thus, the agents reasonably believed, until they entered the premises, that the office space belonged" to the target company named in the warrant. Id.

In this case, the Johnsons's reliance on Garrison and Ofshe is misplaced because the courts found the warrant accurately described the place to be searched. In those cases, there were concerns about compliance with the particularity requirement because the warrants failed to account for the fact that there were multiple units at the target location. In this case, however, the district court found that the warrant's description of the second floor as a single apartment with numerous rooms was accurate. R8 at 93-96; see R1-58, exh. A at 001, 007. In other words, the court found that there were not multiple units on the second floor of the building. R8 at 93-96.

12

This factual finding was not clearly erroneous. The court saw photographs and a videotape of the inside of the second floor, permitting it to conclude, first-hand, that the upstairs was being used as one residence. The only apartment number inside the upstairs area was 1479, which apparently had been painted over. Id. at 68-70. The three separate door buzzers for each of the units had been dismantled. Id. at 41, 67. The subsequent investigation labeled the apartments by room letter, without reference to the apartment numbers. R1-58, exh. E at 056-057. While there was testimony at the suppression hearing indicating that there may have been three separate apartments at one time – there were three apartment numbers on the front and rear entrances to the building, three mailboxes, three broken buzzers, and three separate apartments according to certain public records – there was no evidence that anyone other than Michelle or Isaac lived or controlled the upstairs area. See R8 at 41, 59-60, 64-67, 80-83. Indeed, defense counsel offered FPL bills demonstrating that Michelle was the only subscriber for the address at 1475, and that there was no subscriber at the 1477 or 1479 addresses. Id. at 87-88. This fact greatly reduced the risk of a general search, as there was no indication that non-targets mistakenly would be subject to a search, unlike the non-target resident in Garrison and the company in Ofshe. See United States v. Ellis, 971 F.2d 701, 703-05 (11th Cir. 1992) (holding that a search warrant describing

13

the place to be searched only as "'the third mobile home on the North side' of the road" violated the particularity requirement because it "risked a general search"). Thus, the court did not clearly err in finding that the entire upstairs was being used as a single apartment.

Even if Garrison and Ofshe applied, however, the police officer, Manuel Diaz, reasonably believed that the second floor of the building was a single apartment at the time he applied for the search warrant. See R8 at 22-23. The information forming the basis of this belief also confirms that the district court's factual finding on the above point was not clearly erroneous. Diaz testified that, in light of the apartment numbers outside, he specifically asked the CI whether there were multiple apartments inside, and the CI told him that Isaac controlled the entire upstairs, and that it was one single apartment rather than multiple units. Id. at 20. This was consistent with the CI's account of the two drug transactions, which occurred in two separate rooms and areas of the second floor, and with the fact that there was a spotter standing guard in yet another room on the second floor. Id. at 14-15. The fact that Diaz observed one guarded entrance to the second floor, the access of which appeared to controlled by Isaac, further confirmed the CI's account of the second floor as a single apartment unit. See id. at 9, 16, 19-20. Diaz also testified that he searched the Miami-Dade property website in order to

14

determine the correct address. All of this testimony undermines the suggestion that Diaz deliberately was misleading in the affidavit by failing to include information suggesting that there were three separate apartments. In any event, while Diaz could have been more clear in the affidavit with respect to this point, he did include a reference to, and photograph of, the various apartment numbers on the rear door. R1-58, exh. A at 001, 009, 010. Diaz also could have performed a more thorough check of the public records with respect to the address, but his failure to do so does not render unreasonable his belief that there was one single apartment, especially in light of the fact that the CI, who went inside the building on two occasions, specifically told him that was the case. Accordingly, the search warrant did not violate the particularity requirement.

## 2. Staleness

To satisfy the probable cause standard, the government must reveal facts that make it likely that the items being sought are in that place when the warrant issues. For probable cause to exist, however, the information supporting of the government's application for a search warrant must be timely, for probable cause must exist when the magistrate judge issues the search warrant. Warrant applications based upon stale information fail to create a probable cause that similar or other improper conduct is continuing.

When reviewing staleness challenges we do not apply some talismanic rule which establishes arbitrary time limitations for presenting information to a magistrate, rather, we review each case based on the unique facts presented. In this case-by-case determination we may consider the maturity of the information, nature of the suspected crime

15

(discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched.

United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994) (quotations and citations omitted).

In Harris, we rejected a staleness challenge where the warrant application alleged an ongoing and continuous drug- and money-laundering operation, even though most of the information supporting the probable-cause determination occurred over two years before the warrant was issued. Id. at 450-51. In this case, Isaac argues that the two controlled drug transactions described in the affidavit were stale because they were over two weeks old. He does not cite any authority for this proposition. Indeed, we have rejected staleness challenges involving much older information. See U.S. v. Bervaldi, 226 F.3d 1256, 1264-67 (11th Cir. 2000) (6 months); United States v. Hooshmand, 931 F.2d 725, 735-36 (11th Cir. 1991) (11 months); Domme, 753 F.2d at 953-55 (9 months). Furthermore, in United States v. Green, 40 F.3d 1167, 1172 (11th Cir. 1994), we summarily rejected a staleness challenge where the affidavit alleged that a CI had most recently purchased cocaine the month before the affidavit was submitted.

In addition, and as the above authority makes clear, the district court was correct to emphasize the nature and location of the criminal activity, finding it to

16

be an ongoing drug operation housed in a "semi-permanent" location that was unlikely to relocate in 15 days. R8 at 102-03. This finding was consistent with our precedent, as the two drug transactions occurred five days apart in the same residential apartment, suggesting both the continuous nature of the criminal activity and the unlikelihood that it would relocate in a mere two weeks. See Bervaldi, 226 F.3d at 1265. In addition, Isaac cites no authority for his assertion that the affidavit's lack of detail made the information more likely to be stale, and, in any event, there is no question that the description of the two controlled drug transactions in the affidavit was sufficient to establish probable cause of criminal activity at the premises. Accordingly, we conclude that the information in the affidavit was not stale.

Finally, Michelle's assertion that the district court conflated the particularity inquiry with the staleness inquiry is incorrect. While the court did address these issues at the same time during the suppression hearing, the court understood that these were two separate issues, making distinct findings with respect to each. See R8 at 92-96, 100-03. Accordingly, we conclude that the district court did not err by denying the motion to suppress.

17

**B.** **Whether sufficient evidence supported each of the Johnsons's convictions**

Isaac argues that the evidence was insufficient to sustain his convictions because he never was observed conducting a drug transaction and the CI never was called as a witness. Isaac contends that he never was specifically identified as being inside the apartment when he was arrested. He admits that he may be convicted based on circumstantial evidence, but believes that the evidence, including the documentary evidence, was insufficient in this case. He notes that he did not possess any contraband on his person at the time of his arrest and that he voluntarily submitted a DNA sample to the authorities. He argues that the jury would have to rely on speculation and conjecture in order to convict him on each count.

Michelle argues that the evidence was insufficient to sustain her conspiracy conviction because she was not a willing participant in the drug activity, even though she might have been a knowing observer of such activity. She contends that there was no evidence connecting her to the two controlled buys and her fingerprints were not discovered on any of the evidence. She submits that there was no testimony regarding her location on the second floor when she was arrested, which is significant with respect to the firearm counts. She contends that the utility bills and her job application found during the search did not mean that

18

she was a willful participant in the conspiracy or had constructive possession of the contraband in the apartment. For the same reasons, she argues the evidence was insufficient with respect to the substantive narcotics-possession counts. With respect to the firearm counts, she contends that she could not be convicted based on an actual or constructive possession theory because there was no evidence that she intended to take control of any of the firearms, particularly the Uzi, which was concealed.

"We review de novo a district court's denial of judgment of acquittal on sufficiency of evidence grounds." United States v. Browne, 505 F.3d 1229, 1253 (11th Cir. 2007) (citation omitted). "In conducting this review, we accept all reasonable inferences and credibility choices made in the government's favor, to determine whether a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." United States v. Thompson, 422 F.3d 1285, 1290 (11th Cir. 2005) (quotation omitted). "[T]o support a conviction, [the evidence] need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." Id. (quotation omitted).

### 1. Narcotics Convictions

To convict a defendant for conspiracy under 21 U.S.C. § 846, the government must prove "(1) that a conspiracy existed, (2) that the defendant knew

19

of it, and (3) that the defendant, with knowledge, voluntarily joined it." United States v. Garcia, 447 F.3d 1327, 1338 (11th Cir. 2006). "The very nature of conspiracy frequently requires that the existence of an agreement be proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." Id. (quotation omitted). "Although mere presence at the scene of a crime is insufficient to support a conspiracy conviction, presence nonetheless is a probative factor which the jury may consider in determining whether a defendant was a knowing and intentional participant in a criminal scheme." United States v. Miranda, 425 F.3d 953, 959 (11th Cir. 2005) (quotation omitted). Indeed, a "conspiracy conviction will be upheld when the circumstances surrounding a person's presence at the scene of conspiratorial activity are so obvious that knowledge of its character can fairly be attributed to him." Garcia, 447 F.3d at 1338 (quotation omitted).

To sustain a conviction for possession with intent to distribute controlled substances, "the [g]overnment must prove that the defendant possessed drugs with the intent to distribute them." Miranda, 425 F.3d at 959. These elements may be proven by either direct or circumstantial evidence. Id. However, where the presence of a large amount of narcotics is undisputed, the proof required to sustain a conviction for conspiracy to distribute narcotics is also sufficient to uphold a

20

conviction for possession with intent to distribute. United States v. Cruz-Valdez, 773 F.2d 1541, 1544 (11th Cir. 1985).

In this case, there was sufficient evidence to sustain Isaac's convictions for possession with intent to distribute cocaine on 10 November 2005, and 15 November 2005 as Diaz testified in depth with respect to the two controlled transactions involving the CI. See R11 at 148-62. Diaz's testimony demonstrated that the CI entered the premises on both occasions with Isaac's authorization and purchased cocaine from inside the premises. While Isaac is correct that there was no direct evidence establishing that he sold the cocaine, the circumstantial evidence, based on Diaz's testimony alone, was sufficient for a reasonable jury to find guilt. Miranda, 425 F.3d at 959.

There also was sufficient evidence to sustain Isaac's conspiracy conviction. Diaz testified regarding Isaac's prominent role in the two controlled drug transactions and his apparent authority over access to the second floor. See R11 at 148-62. A SWAT team member for the Miami police department, Agent McNair, testified that he discovered a male in room A upon entering the second floor – which must have been Isaac because he was the only male found at the premises – the same room containing narcotics and firearms in plain view. See R11 at 74-76, 80-81, 103-04, 164-65; Gov. Exh. A14 at (b)-(i). This room also contained cigar

21

boxes containing cash, Isaac's driver's license, and other documentary evidence with Isaac's name on it. R11 at 118-22, 125-29. This evidence was sufficient to permit a jury to conclude that Isaac voluntarily participated in a conspiracy to distribute narcotics. Furthermore, because there was cocaine, crack cocaine, and marijuana discovered throughout the house in amounts not consistent with personal use, and Isaac personally participated in the two controlled buys, there was also sufficient evidence to sustain his convictions for possession with intent to distribute these narcotics, as charged in counts Four through Six, respectively. Cruz-Valdez, 773 F.2d at 1544.

Michelle's conspiracy conviction also is supported by sufficient evidence. Her basic argument on appeal is that she was merely present in the apartment as a knowing observer, but was not a willing participant in the conspiracy. However, there was evidence that she paid the telephone and electric bills for the second floor, evidence capable of supporting a jury's inference that she furthered the conspiracy. R11 at 129-30; R12 at 46. In addition, a job application in her name was found in either room A or B, in close proximity to narcotics, firearms, and drug paraphernalia, some of which were in plain view. This evidence also was sufficient to permit the jury to infer that Michelle exercised dominion and control over the residence, and, therefore, was in constructive possession of the narcotics

22

for purposes of the conspiracy charge. See Garcia, 447 F.3d at 1338 ("A person who owns or exercises dominion and control over a residence in which contraband is concealed may be deemed to be in constructive possession of the contraband" for purposes of a conspiracy charge.) (quotation omitted). Significantly, the record supports the district court's conclusion that the entire second floor was being used as one residential repository for drugs, and that, because there were drugs everywhere, Michelle would have had to have completely "shut down" her senses in order to remain unaware that there was a very active drug operation going on. R12 at 62-63. In this respect, it is not particularly helpful to Michelle that the testimony was unclear as to the precise room where she was discovered during the execution of the search warrant. See R11 at 163-67. Further, the fact that Michelle was married to Isaac, the apparent ringleader of the conspiracy, also supports an inference of her knowing participation in the conspiracy. See Garcia, 447 F.3d at 1338 ("Garcia lived with two conspirators and was related through his common-law marriage to Cuevas, the ringleader of the conspiracy. It would have been reasonable to conclude that Garcia's drug activity was related to the charged conspiracy."). Accordingly, although there was no direct evidence of her involvement in the drug conspiracy, the circumstantial evidence taken in a light most favorable to the government was sufficient to permit the jury to conclude that

23

she was a knowing participant in the drug conspiracy. Thus, the evidence also was sufficient to sustain her convictions for possession with intent to distribute cocaine, crack cocaine, and marijuana. Cruz-Valdez, 773 F.2d at 1544.

## 2. Firearms Convictions

18 U.S.C. § 922(g)(1) makes it a crime for a felon to possess a firearm. "With firearms, possession may be either actual or constructive." United States v. Thompson, 473 F.3d 1137, 1143 (11th Cir. 2006) (quotation omitted), cert. denied, 127 S. Ct. 2155 (2007). "Like constructive possession of drugs, the government can establish constructive possession of a firearm by proving ownership, dominion, or control over the firearm." Id. (quotation omitted). "[A] person who owns or exercises dominion and control over a residence in which contraband is concealed may be deemed to be in constructive possession of the contraband." United States v. Molina, 443 F.3d 824, 829 (11th Cir. 2006) (quotation omitted).

Similarly, it is also a crime for a felon to possess body armor if the previous felony was either a crime of violence under 18 U.S.C. § 16 or an offense under state law that would constitute a crime of violence under § 16. 18 U.S.C. § 931(a).

"To establish possession of a firearm in furtherance of a drug trafficking crime [under 18 U.S.C. § 924(c)(1)], there must be some nexus between the firearm and the drug selling operation." Thompson, 473 F.3d at 1143. "The nexus

between the gun and the drug operation can be established by accessibility of the firearm, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found." Id. (quotations omitted). We have held that the nexus requirement was satisfied where the firearms were readily available, though hidden, in the room where drugs were being packaged for sale. Id. at 1143-44. We have held also that the nexus requirement was satisfied where the firearm was found in the drawer of the defendant's nightstand, in close proximity "to the drugs, digital scales, and [a] large amount of money in the bedroom closets." Molina, 443 F.3d at 830. Similarly, we held that the nexus requirement was satisfied where there were numerous loaded firearms and ammunition distributed in different places in the house and that were easily accessible. United States v. Suarez, 313 F.3d 1287, 1292-93 (11th Cir. 2002).

With respect to the Johnsons's § 922(g) convictions, the evidence was sufficient for the jury to conclude that both Isaac and Michelle had constructive possession over the firearms found in the apartment. As discussed above, there was evidence establishing that they both exercised dominion and control over the residence. Thompson, 473 F.3d at 1143. With respect to Isaac, Diaz testified that he appeared to have sole authority over who was granted access to the second floor, Isaac's personal belongings were discovered in the apartment, and Isaac was

25

located in the same room as two firearms in plain view when the search warrant was executed. With respect to Michelle, she was responsible for paying the utility bills for the apartment, her job application was located inside the apartment, and she physically was located inside the apartment when the search warrant was executed. Furthermore, The parties stipulated that there were firearms discovered in the apartment, and the firearms had traveled in interstate commerce. R12 at 43-46. The evidence was sufficient to sustain their § 922(g) convictions.

The evidence also was sufficient for the jury to sustain the Johnsons's § 931 convictions for being felons in possession of body armor. Although we have never addressed this particular offense, like § 922(g), it requires that a felon "possess" body armor. There was testimony that the bullet-proof vest was discovered in room "E" of the apartment, and, as discussed above, because both Isaac and Michelle exercised dominion and control over the residence, the jury was permitted to conclude that they constructively possessed body armor for purposes of § 931. Furthermore, neither Isaac nor Michelle argue that their previous felony was not a crime of violence or that the body armor was not transported in interstate commerce, and, thus, have abandoned any such argument on appeal. United States v. Cunningham, 161 F.3d 1343, 1344 (11th Cir. 1998). Accordingly, the evidence was sufficient to sustain the Johnsons's § 931 convictions.

With respect to the Johnsons's § 924(c) convictions, and although neither defendant raises the issue, the evidence was sufficient for the jury to find a nexus between their constructive possession of the firearms and the drug operation. This is so because there was a semi-automatic handgun in plain view on the night stand in room "A", the bedroom, in close proximity to cocaine in plain view on the bed. R11 at 74-75. In that same room a revolver, drug packaging material, and marijuana also were in plain view. R11 at 75-76. Under our caselaw, this evidence was sufficient for the jury to find a nexus between the firearms and the drug activity, and therefore, for the jury to sustain the Johnsons's § 924(c) convictions. See, e.g., Thompson, 473 F.3d at 1173-74. Therefore, we affirm the Johnsons's drug and firearms convictions.

**C.** **Whether the district court abused its discretion by admitting hearsay statements of a non-testifying confidential informant**

Isaac argues that on two unspecified occasions during the trial, the government improperly elicited testimony from an officer regarding hearsay statements of the CI. Because the government's case against Isaac was entirely circumstantial, he argues that this admission was prejudicial and requires a new trial. For support, he cites passages from our decision in United States v. Arbolaez, 450 F.3d 1283, 1291-92 (11th Cir. 2006) (per curiam), where we concluded that the district court impermissibly admitted hearsay statements and there was a

27

violation of the Confrontation Clause. Although we affirmed the convictions in Arbolaez on harmless-error grounds, Isaac contends that we could not affirm on that basis in this case because there was not strong, independent evidence of his guilt.

We review the district court's admission of evidence for abuse of discretion. Arbolaez, 450 F.3d at 1289. "The Federal Rules of Evidence define hearsay as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" Id. at 1290 (quoting Fed. R. Evid. 801(c)). "Such hearsay is not admissible except as provided by the Rules." Id. (citing Fed. R. Evid. 802).

In Arbolaez, we stated "that testimony as to the details of statements received by a government agent and later used as the basis for an affidavit in support of a search warrant, even when purportedly admitted not for the truthfulness of what the informant said but to show why the agent did what he did after he received that information, constitutes inadmissible hearsay." Id. (quotation omitted). Even if the district court impermissibly admits such hearsay, however, "to require a new trial a significant possibility must exist that, considering the other evidence presented by both the prosecution and the defense, the statement had a substantial impact upon the verdict of the jury." Id. (quotation omitted).

28

"Evidentiary and other nonconstitutional errors do not constitute grounds for reversal unless there is a reasonable likelihood that they affected the defendant's substantial rights; where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." Id. (quotation omitted).

In this case, Isaac fails to identify the "two occasions" at trial of which he complains. Nonetheless, it appears from the context of his argument that the government is correct that he is referring to Diaz's testimony, as he was the only witness to be in contact with the CI. The government also properly identifies the four instances during Diaz's testimony to which Isaac could be referring. First, on cross-examination, counsel for Isaac asked Diaz if he knew where the CI went after he entered he entered the building or from whom, if anyone, he purchased drugs. R11 at 179. Diaz responded that he had that information based on what the CI told him. At that point, defense counsel objected and moved to strike the answer, and the court immediately granted the motion and instructed the jury to disregard the last question and answer. Id. Thus, even assuming that Diaz's answer impermissibly referenced hearsay statements of the CI, the district court did not admit the statements.

Second, in response to Isaac's counsel's question whether the upstairs could be described as three separate apartments, Diaz stated, "Based on the information I had . . . ," at which point defense counsel interrupted and clarified his question. Id. at 182. This incomplete answer did not sufficiently introduce or reference any of the CI's hearsay statements.

Third, counsel for Michelle asked Diaz about his description of the man that gave the CI the narcotics, and, before Diaz could answer, the government objected, noting that defense counsel again opened the door to what the CI had told Diaz. Id. at 187. After a sidebar, defense counsel moved on and Diaz never gave an answer to the question, and, thus, did not introduce any of the CI's hearsay statements. Id. at 187-88.

Fourth, on re-direct, the government asked Diaz to answer "yes or no" as to whether he believed the second floor was one apartment based what the CI told him, and he answered yes. Id. at 192. Even if this testimony impermissibly introduced the CI's hearsay statements, it was harmless. First, evaluated in context, this specific question was directed at Diaz's conduct with respect to obtaining the search warrant and did not constitute direct evidence of Isaac's guilt of the crimes charged in the indictment. See id. at 192-93 (following up with questions concerning Diaz's actions in obtaining the search warrant). Second, as

30

discussed above, Isaac's convictions were supported by sufficient evidence independent of this testimony. Furthermore, not only were his convictions supported by independent evidence, but other witnesses also independently testified that they also believed that the second floor was being used as one apartment. R11 at 89-90, 99-100; R12 at 20. Thus, Isaac's argument that the error was not harmless is incorrect. Arbolaez, 450 F.3d at 1290-91.

Moreover, the government is correct that Isaac has not sufficiently raised a Confrontation Clause challenge on appeal, and, thus, has abandoned this issue. Cunningham, 161 F.3d at 1344. Accordingly, the district court did not abuse its discretion on this issue.

## III. CONCLUSION

The district court did not err by denying the Johnsons's suppression motion because: (1) the search warrant accurately described the premises, and, therefore did not violate the Fourth Amendment's particularity requirement; and (2) the affidavit's two-week-old information with respect to an ongoing drug operation was not stale. The record also contains sufficient evidence to support the Johnsons's various narcotics and firearms convictions. The district court did not abuse its discretion by admitting hearsay statements of a confidential informant

because, to the limited extent such statements were admitted, the admission was harmless error. **AFFIRMED.**