[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 27, 2006
THOMAS K. KAHN
CLERK

No. 05-15052

D. C. Docket No. 03-00684-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CORRY THOMPSON,
a.k.a. Larry Scott,
a.k.a. Corey Thompson, et al.,

Defendant-Appellant.

Appeal From The United States District Court
For the Northern District of Georgia

**(December 27, 2006)**

Before CARNES and MARCUS, Circuit Judges, and JORDAN,* District Judge.

CARNES, Circuit Judge:

---

* The Honorable Adalberto J. Jordan, United States District Judge for the Southern District of Florida, sitting by designation.

In this appeal from his drug-related convictions and sentences Corry Thompson raises a number of issues, two of which merit discussion. The one with the most general application involves the requirement of 21 U.S.C. § 851(a)(1) that the government give formal written notice that it intends to seek enhanced penalties under 21 U.S.C. § 841 and identify the prior convictions it will rely on for that purpose. The § 851(a)(1) compliance issue arises from the fact that the required notice was given before Thompson's first trial, which ended in a mistrial, but no additional notice was given before the retrial. It's a little more complicated than that, because between the two trials the government obtained a superceding indictment adding more counts, and Thompson was convicted in the second trial of all the counts, not just those that were in the indictment at the time he received the notice before the first trial. We will get to this adequacy of notice issue after we set out the historical and procedural facts and address a sufficiency of the evidence issue that also deserves discussion.

## I.

In late September 2002 an informant for the Atlanta police department purchased crack cocaine at an apartment on Oglethorpe Avenue in Atlanta. Based on that purchase the police obtained a search warrant, which they executed on October 1, 2002. When the officers entered the apartment they found four men

and one child in the living room. The men were packaging drugs for sale, using small plastic bags and a digital scale.

One of the men, Deidric Parks, got up and ran into the apartment's left-rear bedroom. The officers followed him there where they found more bags of cocaine. As they escorted Parks out of that bedroom they looked across the hall into the right-rear bedroom, where they spotted more powder and crack cocaine. Those drugs were inside a plastic bag sitting on top of a plate, which was itself sitting on top of a bed. A thorough search of the apartment yielded more cocaine, marijuana, and ecstasy tablets. The officers also found two loaded handguns in the living room, one under a chair cushion and one on the floor.

Thompson was not in the apartment when the officers executed the warrant on October 1, 2002, but they found several documents belonging to him in the right-rear bedroom. Those documents had been placed on the bed, right next to the cocaine. Three of the documents were traffic citations that had been issued to Thompson on August 27, 2002 while he was driving Deidric Parks' car. One of the citations was for making an improper left turn, one was for driving with a suspended license, and one was for driving without a license. Thompson apparently told the officer who issued the citations that he resided at Welcome All Terrace in Atlanta, Georgia, because that is the address on the citations.

Other documents on the bed were an undated vehicle repair order for Thompson's car and Red Cross disaster relief application papers dated September 30, 2002 (the day before the search). The relief application papers listed Thompson's residence as Beckwith Street in Atlanta. Another document found on the bed next to the cocaine was an undated printout of telephone numbers that Thompson had stored in his cell phone. The list showed phone numbers for people listed by nickname, like "Bald Head" and "Big Boy." Testimony established that drug dealers sometimes use phone number lists like the one found on the bed to contact their customers.

In mid-October 2002, about two weeks after that search of the apartment on Oglethorpe Avenue, and based on what was found there, Thompson was arrested and charged with selling drugs out of the apartment. He was not promptly indicted, however; in fact, he was not indicted for those crimes until March 2005.

In the meantime, Thompson was arrested again in late October 2003. This arrest followed an investigation into drug sales at a house located on Palmetto Street in Atlanta. The investigation began after the same police informant who had purchased drugs at the Oglethorpe Avenue apartment purchased cocaine for officers at the Palmetto Street house. After he did so, the officers obtained a search warrant for the house, but they decided to conduct surveillance before

4

executing the warrant. While doing so, an officer saw Thompson enter the home carrying a dog food bag. Twenty minutes later, the same officer saw Thompson leave the house with two other men but without the bag.

Minutes after they left the house, the officers detained Thompson and the other two men. They used Thompson's keys to unlock the house, where they found the dog food bag. Instead of dog chow, the bag contained cocaine. Next to the bag the officers also found several small plastic bags filled with ecstacy pills. In other parts of the house they found two loaded handguns stuffed among the couch cushions, two shoe boxes containing marijuana, three sets of digital scales, and two surveillance monitors. The monitors were wired to outside cameras that covered the house's perimeter. The house was set up for drug sales, not for law-abiding everyday living. After the police finished searching the home, they arrested Thompson.

This time the government moved quickly to indict Thompson. On November 18, 2003, a federal grand jury handed down a six-count indictment against Thompson based on the October 2003 search. The counts included the following charges: being a convicted felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g), 924(e) (count one); possessing cocaine, cocaine base, marijuana, and Methylenedioxymethamphetamine (ecstasy), with the intent to

distribute, in violation of 21 U.S.C. §§ 841, 851 (counts two through five); and possession of firearms in furtherance of drug-trafficking crimes, in violation of 18 U.S.C. § 924(c) (count six).

On August 26, 2004, the government filed and served a sentencing information, as required by 21 U.S.C. § 851(a)(1), informing Thompson that it would seek to enhance his sentence under § 841(b)(1)(A)(iii). The information listed Thompson's three prior convictions for possession of cocaine with intent to distribute, as well as his prior conviction for possession of a firearm by a convicted felon, as the basis for the enhancement, and it noted that he and his attorney had previously been provided with copies of the indictments and sentences in those earlier cases. In addition to warning generally that the prior convictions would lead to enhancement "of any sentence imposed on the defendant," the government's information specifically let Thompson know that if he were convicted on count three in the indictment (possession of cocaine with the intent to distribute), the enhanced sentence he would face on that count would be a mandatory one of "life imprisonment without release, pursuant to 21 U.S.C. § 841 (b)(1)(A)."

Thompson's first trial was held in September of 2004. It involved the six counts stemming from the search of the Palmetto Street house, which were the

6

only charges in the indictment at that time. The trial ended with a hung jury. Before Thompson was retried, the government on March 1, 2005 obtained a superseding indictment, which added five more counts to cover the charges arising from the search of the Oglethorpe Avenue apartment. Those five new counts charged Thompson with: being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g), 924(e) (count seven); possessing cocaine, cocaine base, and ecstasy with the intent to distribute, in violation of 21 U.S.C. §§ 841, 851 (counts eight through ten); and possessing a firearm in furtherance of drug-trafficking crimes, in violation of 18 U.S.C. § 924(c) (count eleven).

The charges contained in the five counts added by the superceding indictment did not increase the maximum sentence that Thompson faced in the sense that he was already facing a mandatory life sentence if he was convicted of count three and the enhancement was applied under 21 U.S.C. § 841. The new charges, however, did expose him to two sets of sentences instead of one, including an additional mandatory life sentence. At the second trial, which was held from April 18–25, 2005, Thompson was convicted on all eleven counts contained in the superceding indictment.

Having filed a § 851(a)(1) information before Thompson's first trial, the government did not file another one before his second trial began. It did, however,

file another one the day after the jury returned its verdict convicting Thompson of all eleven counts in the superceding indictment. The new information added the words "Superseding" to the caption ("Sentencing Information Establishing Prior Convictions for the Purpose of Increased Punishment") and had a different date. Other than that it was identical in all respects to the information filed before the first trial, except that the specific warning of a mandatory term of life imprisonment was pegged to counts three and nine of the superceding indictment, instead of to count three alone.

At sentencing on September 1, 2005, Thompson objected to the district court's enhancement of his sentence under § 841, arguing that the government had failed to comply with § 851(a)(1) because it had not filed or refiled the necessary information before the second trial started. The district court overruled the objection and sentenced Thompson to the enhanced penalties on each drug count, including concurrent terms of life imprisonment on counts three and nine.

Thompson raises several other issues before us involving the denial of his motion to suppress, the denial of his motion to sever, the admission of prior convictions evidence, the constitutionality of the firearms statutes, the sufficiency of the evidence to convict him of counts one through six (the Palmetto Street house charges), and the sufficiency of the evidence to convict him of counts seven

8

through eleven (the Oglethorpe Avenue search).  None of those other issues is substantial enough to merit discussion, except for the one involving the sufficiency of the evidence to convict Thompson on the Oglethorpe Avenue counts.  We will address it before getting to the § 851 issue.

## II.

Thompson contends that the district court erred in denying his motion for a judgment of acquittal because no rational jury could have found beyond a reasonable doubt that he possessed the drugs and firearms that were seized in the search of the Oglethorpe Avenue apartment in October 2002.  He argues that the evidence against him proved nothing more than his presence in the apartment some time before the search was conducted.  We review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the verdict.  United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005).  The jury gets to make any credibility choices, and we will assume that they made them all in the way that supports the verdict.  United States v. Kelly, 888 F.2d 732, 740 (11th Cir. 1989).  It is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt.  United States v. Mieres-Borges, 919 F.2d 652, 656 (11th Cir. 1990).

To convict Thompson the government must have proved beyond a reasonable doubt that he knowingly possessed the drugs with intent to distribute them. United States v. Poole, 878 F.2d 1389, 1391 (11th Cir. 1989). Thompson does not dispute that whoever had possession of the drugs in the apartment intended to distribute them. He simply argues that there was not enough evidence to prove that he was the person who possessed them. Possession can be actual or constructive and can be shown through direct or circumstantial evidence. Mieres-Borges, 919 F.2d at 657 (citing United States v. Pantoja-Soto, 739 F.2d 1520, 1525 (11th Cir. 1984)). Constructive possession exists where the defendant had dominion or control over the drugs or over the premises where the drugs were located. Poole, 878 F.2d at 1392; United States v. Molina, 443 F.3d 824, 829 (11th Cir. 2006) ("[A] person who owns or exercises dominion and control over a . . . residence in which contraband is concealed may be deemed to be in constructive possession of the contraband . . . ." (quoting United States v. Vera, 701 F.2d 1349, 1357 (11th Cir. 1983))). However, a defendant's "mere presence in the area of contraband or awareness of its location is not sufficient to establish possession." Mieres-Borges, 919 F.2d at 657 (quoting United States v. Maspero, 496 F.2d 1354, 1359 (5th Cir. 1974)).

In support of his mere presence defense Thompson cites Mieres-Borges, a

case where we held that there was not enough evidence to prove that one of the defendants ever had possession of some cocaine that the government had discovered on a beach. Id. at 659–60. The defendant was not on the beach when he was arrested, but instead was on a boat that the government suspected had been used to transport the drugs to the beach. Id. at 658–59. There was no evidence tying the defendant directly to the drugs, no evidence establishing that the defendant had been on the beach where the drugs were found, and no evidence actually establishing that the boat the defendant was on had transported the drugs. Id. at 658–60. The defendant's presence in the general area where the drugs were found did nothing more than create a suspicion of guilt. Id. at 659.

In contrast with Mieres-Borges, the evidence here links Thompson to the very location the drugs were found, and it does more. Documents that were undisputedly Thompson's were found beside the powder and crack cocaine on one of the beds in the apartment. Those documents establish a continuous relationship between Thompson and Deidric Park, a resident of the apartment who was arrested when the police executed the warrant and who was unquestionably involved in the distribution of the drugs. Some of the documents showed that six weeks before the search, Thompson had received traffic tickets while driving Parks' car less than one-and-a-half miles from the apartment. Other documents involving

Thompson's Red Cross relief application were dated one day before the apartment search, which was shortly after the informant purchased drugs at the apartment. Thompson never did explain why the address he listed on the relief application papers differed from the one on the traffic citations.

The third document of Thompson's that was found next to the powder and crack cocaine on the bed was a list of phone numbers from his cell phone. An officer testified that such lists were routinely used by drug dealers to contact purchasers. That inference was bolstered by the nature of the names on the list—"Bald Head," "Big Boy," "Whiteboy," and the like— and by testimony that drug dealers often listed their customers by pseudonyms.

Then there is the fact that Thompson testified. He denied any involvement with drug sales in the Oglethorpe Avenue apartment, but he gave conflicting testimony about whether he had ever been in that apartment. On direct examination Thompson stated that he had been in the apartment, but on cross-examination he stated that he was never there. He testified that on the day the officers executed the warrant he was renting a house on Beckwith Street and that he had been living at that house when he was cited while driving Parks' car, but the citations listed his residence as Welcome All Terrace in Atlanta, which is at another address. The court also permitted the government to introduce for

12

impeachment purposes evidence of six prior felony convictions, as well as evidence that Thompson had given false testimony at an earlier hearing in this case and that he has history of giving false names to the police.

The jury had the opportunity to hear Thompson's testimony, to observe his demeanor, and to evaluate his truthfulness. If the jury concluded that Thompson was lying, as it had plenty of reason to do, the jury was entitled under United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995), and similar decisions to infer that the opposite of his testimony was true.

As to the firearms counts stemming from the two handguns found at the Oglethorpe Avenue apartment, one charged Thompson with being a felon in possession of those handguns, and the other charged him with possessing them in furtherance of a drug trafficking crime. With firearms, "[p]ossession may be either actual or constructive." United States v. Sweeting, 933 F.2d 962, 965 (11th Cir. 1991). Like constructive possession of drugs, the government can establish constructive possession of a firearm by proving "ownership, dominion, or control over the firearm." Molina, 443 F.3d at 830 (citing United States v. Ferg, 504 F.2d 914, 916 (5th Cir. 1974) (internal quotations omitted). To establish possession of a firearm "in furtherance" of a drug trafficking crime, there must be "some nexus between the firearm and the drug selling operation." Id. (quoting United States v.

13

Timmons, 283 F.3d 1246, 1253 (11th Cir. 2002)). "The nexus between the gun and the drug operation can be established by . . . 'accessibility of the firearm, . . . proximity to the drugs or drug profits, and the time and circumstances under which the gun is found.'" Id. at 829–30 (quoting United States v. Ceballos-Torres, 218 F.3d 409, 414–15 (5th Cir. 2000)).

Because the two handguns found at the Oglethorpe Avenue apartment were readily available, although hidden, in the living room where drugs were being packaged for sale, there was enough evidence for the jury to find that they were possessed in furtherance of the drug business by those who were in it. See Molina, 443 F.3d at 830. The same evidence we have already discussed, including inferences the jury could have drawn from Thompson's testimony, that was sufficient to convict him of participating in the drug distribution out of the apartment is also sufficient to prove that he was guilty of constructively possessing the firearms to further the drug distribution. See id. (concluding that sufficient evidence existed to support firearms verdict where the gun was accessible and was in close proximity to drugs, digital scales, and a large amount of money).

Because all of the evidence, including the inferences the jury could draw from Thompson's testimony, was sufficient to convict him on the Oglethorpe

14

Avenue drug and firearms counts, the district court did not err in denying his motion for judgment of acquittal.

## III.

Thompson contends that the enhancements to his sentence that were applied under 21 U.S.C. § 841(b)(1)(A)(iii) should not have been because the government did not properly serve him with notice as required by 21 U.S.C. § 851(a)(1). As we mentioned earlier, the government properly served Thompson with the required § 851(a)(1) notice before the first trial. If he had been convicted in that trial, there would be no § 851(a)(1) issue. Likewise, if the government had filed its "superceding" information about the prior convictions before the second trial, instead of the day after Thompson was convicted, there would be no § 851(a)(1) issue either. But Thompson was not convicted at the first trial and the government did not file its superseding information before the second one began (or even before it ended), so the issue is here.

The relevant part of § 851(a)(1) provides that:

No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

15

(emphasis added). The requirements of § 851 are not precatory; they must be followed in order for the § 841 enhancements to be applied. See Harris v. United States, 149 F.3d 1304, 1306 (11th Cir. 1998) (this Court has "unambiguously and repeatedly held that a district court lacks jurisdiction to enhance a sentence unless the government strictly complies with the procedural requirements of § 851(a)"); United States v. Noland, 495 F.2d 529, 533 (5th Cir. 1974) ("Provision for enhanced sentencing is a legislative decision, and the procedure the legislature prescribes to effectuate its purpose must be followed.").

Even though the defendant in Noland had actual knowledge of the prior conviction, admitted that conviction at the sentence hearing, and was not surprised that his sentence was subject to provisions of § 841, we held that the enhancement could not be applied because the formal notice required by § 851(a)(1) had come too late. 495 F.2d at 533. Similarly, in Harris we held that an enhancement could not be applied because the formal § 851(a)(1) information had been filed after the defendant's guilty plea instead of before it. Harris, 149 F.3d at 1306. Under those two decisions the "superceding" information the government filed after the conviction in Thompson's second trial has no effect, and the government does not suggest otherwise. The § 841 enhancements that Thompson received on each of the eleven counts in the superceding indictment after he was convicted at the

16

second trial must stand or fall on the information the government filed before the first trial. Because the information that this issue turns on was filed before the first trial, it came before the superceding indictment added five counts to the original six. For that reason, the issue of the adequacy of the information under § 851(a)(1) divides into two parts, one involving the first six counts and the other involving the last five.

## A.

As to the enhancement of the sentences for counts one through six, Thompson did receive formal § 851(a)(1) notice via the information filed "before trial," which is the way the statute describes when it must be filed. So the plain language of the statutory requirement is against Thompson's position that the notice should have been refiled as to the original counts before the retrial of those counts.

In any event, our decision on this part of the issue is controlled by United States v. Williams, 59 F.3d 1180, 1185 (11th Cir. 1995), where we held that "once the information [is] filed, it [is] not necessary that it be refiled for each consecutive trial in the same court." Williams involved three trials. The defendants were convicted at their first trial, but we reversed their convictions because of an evidentiary error. Id. at 1182. The trial on remand resulted in a

17

mistrial due to a juror's misconduct. Id. At the third trial both defendants were convicted, and the government sought to enhance Williams' sentence pursuant to § 851. Id. at 1185. The government had filed a § 851 information before the first trial but did not refile another information before the second or third trials. Id. Because of that the district court had refused to apply the § 841 enhancements. We reversed, holding that "once the information was filed, it was not necessary that it be refiled for each consecutive trial in the same court." Id.

In reversing the district court, we explained that there are two reasons that § 851 requires the information to be filed "before trial" or before a guilty plea is entered. Id. One is that getting the warning and specification of the prior convictions then gives the defendant time to contest their accuracy. Id.; see also United States v.Willis, 102 F.3d 1078, 1085 (10th Cir. 1996) ("The purpose of the notice filing is to give the defendant an opportunity to establish either that he had not been convicted of the crimes the government relies upon for the sentence enhancement or that the convictions do not qualify as the type satisfying the enhancement requirements. Here the defendant had that opportunity."). The other reason the statute makes the government file the information before trial or entry of a guilty plea is that it gives the defendant "time to determine whether to enter a plea or go to trial and plan his trial strategy with full knowledge of the

18

consequences of a potential guilty verdict." Williams, 59 F.3d at 1185

We said in Williams that the real issue was "whether the information was filed too long before trial, or whether the information must be filed for each trial and retrial." Id. We found "no suggestion that the information can be filed too early," id., and that there was "no support in the statute, in the cases, or in reason" for requiring the government to refile the sentencing information before every trial in the same case. Id. But we did include in our Williams opinion this sentence with its qualifying clause at the end: "The established purposes of the filing and service [of the sentencing information] are fully met upon the first filing and service, at least where the case involves the same attorneys, the same court, and the same indictment." Id.

As Thompson points out, he did switch attorneys between the first and second trial, so there is that difference between his case and Williams. However, Thompson's new attorney admitted in the district court that he knew of Thompson's prior convictions and knew that the government had filed the information before the first trial. Even without that admission, a formal, legal document threatening the defendant with enhanced penalties—especially where one of them is life without release—is not something that a defendant is likely to forget, and it is fair to charge an attorney with full

19

knowledge of the pleadings filed before he entered the case. See United States v. Mayfield, 418 F.3d 1017, 1021 n.1 (9th Cir. 2005) (rejecting the defendant's argument that his enhanced sentence should be reversed on § 851 grounds because he had a different attorney at his retrial).

Thompson also argues that, unlike the defendant in Williams, he was not sentenced at the conclusion of the first trial, but that makes no difference. Accepting the proposition that a § 851(a)(1) information cannot adequately inform a defendant of the sentence he faces until after he is actually sentenced would undermine the whole point of requiring that the information be filed before trial. For these reasons, we conclude that the enhancements to the sentences Thompson received for counts one through six, which were in the indictment when the § 851(a)(1) information was filed, are due to be affirmed.

**B.**

We turn now to the § 851(a)(1) issue involving enhancements of the sentences imposed for those five counts (numbers seven through eleven) that were added in the superceding indictment. Those enhancements can be upheld only if an earlier information carries over to counts added after it was filed. So far as the plain language of § 851(a)(1) is concerned, there is nothing to prevent the effect of an information from projecting forward to charges that are added to an indictment

20

afterwards. Even where the effect is projected forward, the information still was filed "before trial" and it stated "in writing the previous convictions to be relied upon," which is all that 21 U.S.C. § 851(a)(1) requires on its face. There is no requirement in the statute that the information specify which charges in the indictment will result in an enhanced sentence because of the previous convictions. See § 851(a)(1).

Nor is it necessary to limit the effect of a filed information to the charges in the indictment at the time of the filing in order to fulfill the purposes of the statutory provision. An information filed before trial gives the defendant an opportunity to contest the validity of the specified prior convictions regardless of whether the effect extends to future as well as present charges. See Williams, 59 F.3d at 1185. The failure to file a new § 851(a)(1) information does not remove or reduce the opportunity to challenge the prior convictions. That opportunity continues to exist until the time of sentencing. In this case, there was a year between the filing of the information and the sentence hearing, and there were six months between the return of the superceding indictment and sentencing. Thompson neither contends that the failure to file a new information cut down his opportunity for challenge, nor that the prior convictions were subject to challenge. He concedes they were valid.

21

As to the second purpose of the § 851(a)(1) requirement, failure to refile an information after a superceding indictment does not interfere with the defendant's determination whether to enter a plea or go to trial or with his ability to shape his strategy with full knowledge of the penalties he faces. The information that has already been filed in the record puts the defendant on notice that the government intends to use his prior convictions to increase the sentences he will receive to the maximum extent possible. Thompson does not contend that he would have done anything differently if the government had filed another § 851(a)(1) information.

The information that was filed in this case stated that Thompson's convictions would be used to enhance punishment "as to any sentence imposed upon the Defendant, upon his conviction of the charges contained in the present case." Charges added thereafter by superceding indictment are "charges contained in the present case" (although they were not at that earlier time charges that were present in the case). It is true that the information, going beyond the requirements of the statute, specified that if Thompson were convicted on count three (possession of cocaine base with intent to distribute on or about October 23, 2003), he would be subject to a mandatory term of life imprisonment without release. And Thompson was never informed that he would face the same sentence if convicted of the superceding indictment's count nine (possession of cocaine

22

base with intent to distribute on or about October 1, 2002). But Thompson does not, and plausibly could not, suggest that he was misled into thinking that the law would provide different sentencing maximums for exactly the same crimes merely because they were committed a year apart. The fact that the government goes beyond the statutory requirements in an information does not mandate that it file an additional one later.

For these reasons, we conclude that the information filed before the superceding indictment was returned was sufficient to satisfy § 851(a)(1), and the district court did not err by enhancing Thompson's sentence under § 841(b)(1)(A).

**AFFIRMED.**

23