[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 11, 2010
JOHN LEY
ACTING CLERK

No. 09-11727
Non-Argument Calendar

_____

D. C. Docket No. 08-00204-CR-1-LSC-TMP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LINDA FAYE FINCH,
JAMES WILLIE ASKEW, III,
a.k.a. Q,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

(January 11, 2010)

Before TJOFLAT, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

Linda Finch appeals her convictions for conspiracy to possess with intent to distribute 50 or more grams of crack cocaine, and possession with intent to distribute 50 or more grams of crack cocaine. James Askew appeals his conviction and 240-month sentence for conspiracy to possess with intent to distribute 50 or more grams of crack cocaine. Finch and Askew both challenge the sufficiency of the evidence to support their convictions. Askew raises two additional arguments: (1) the district court erred in admitting keys recovered from his residence; and (2) his sentence is procedurally and substantively unreasonable. After careful review, we AFFIRM as to both Finch and Askew.

## I.  BACKGROUND

Finch and Askew were indicted for conspiring to possess with intent to distribute at least 50 grams of crack cocaine, in violation of 21 U.S.C. §§ 841 and 846. Finch was also charged with possession with intent to distribute at least 50 grams of crack cocaine, in violation of 21 U.S.C. § 841, and four counts of firearms offenses. Prior to trial, Askew filed a motion in limine to exclude evidence of keys recovered from his residence. Askew contended the keys were irrelevant to the conspiracy because they were found after the conspiracy had allegedly ended. The court denied the motion before trial began.

The evidence at trial established the following. In June 2007, Officer Chuck

2

Battles of the Calhoun County Drug Task Force executed a search warrant at a house located at 2707 McCoy Avenue in Anniston, Alabama ("the McCoy house"). Officers apprehended Finch, the only person inside the house, as she ran towards the back door. A search of the house yielded cocaine, marijuana, drug paraphernalia, digital scales, two-way radios, security cameras, and numerous firearms. The amount of crack cocaine recovered was 142.35 grams, worth more than $50,000. Officer Battles also discovered several letters, bills, and other documents belonging to Askew and Finch. These papers included a letter to Finch from her brother discussing drug sales she was expected to handle and referencing a man named "Q." Officers further confiscated $10,724.69 in cash and a drug ledger listing customers' names.

Three weeks later, on 21 June 2007, the police searched Askew's residence at 317 Rockwood Drive in Anniston. Officer Battles testified that agents found a set of keys, which opened the front and back door locks of the McCoy house. Officer Battles further testified that "[t]here was also a set of older door locks that had been removed from the initial search warrant on the 1st of June and had been placed in a box on the floor, and a set of keys also opened those as well." Doc. 93 at 148.

Constance Long, who grew up with Askew, testified that Askew went by the

nicknames of "Junebug" and "Q." Long lived directly across from the McCoy house. Long's uncle told her that Askew was moving into the McCoy house and asked her in 2006 to put the utility bills for that house in her name. Long agreed to do so, although she did not actually pay the bills. Long purchased crack, a crack pipe, alcohol, pills, and other items from Askew at the McCoy house. Long referred to the McCoy house as "the store" because whatever she wanted was there. Id. at 90. Long also saw Finch at the McCoy house, and purchased crack from her and Askew "[e]very other day. . . [u]ntil they got busted." Id. at 88. While at the McCoy house, Long observed stacks of cash piled on the kitchen counter and Askew and Finch counting the money together. Long also saw Finch and Askew together on other occasions "[j]ust talking" in the kitchen. Id. at 86.

According to Long, Askew controlled who entered the McCoy house to purchase drugs. Those customers who were not allowed to enter would exchange money for drugs through a slot at the bottom of the back door. Long witnessed numerous people buying, selling, and using drugs at the McCoy house. Long admitted that she also sold drugs at the McCoy house.

Both Finch and Askew moved for judgments of acquittal at the close of the government's case-in-chief. The court denied the motions, except as to Finch's motion relating to the four firearm counts. The jury convicted both defendants of

4

conspiracy as charged, and it also found Finch guilty of possession with intent to distribute 50 grams of crack cocaine. In April 2009, the court sentenced Finch and Askew each to 240 months of imprisonment. This appeal followed.

## II. DISCUSSION

A. Sufficiency of the Evidence

Both Finch and Askew challenge the sufficiency of the evidence to support their convictions, an issue we review de novo. See United States v. Garcia-Bercovich, 582 F.3d 1234, 1237 (11th Cir. 2009). We draw all reasonable inferences and credibility choices in favor of the jury's verdict, and consider the evidence in the light most favorable to the government. See id. We will affirm "unless, under no reasonable construction of the evidence, could the jury have found the [defendant] guilty beyond a reasonable doubt." United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005) (per curiam).

In order to prove Finch and Askew guilty of conspiracy under 21 U.S.C. § 846, the government had to establish that a conspiracy (or agreement) existed between the two to possess with the intent to distribute at least 50 grams of crack cocaine, that each defendant knew about the conspiracy, and that each defendant knowingly joined the conspiracy. See Garcia-Bercovich, 582 F.3d at 1237. A conspiracy may be inferred from circumstantial evidence, including a person's

5

presence at the scene and facts demonstrating a "concert of action." United States

v. Westry, 524 F.3d 1198, 1212 (11th Cir. 2008) (per curiam) (quotation marks and

citation omitted), cert. denied, ___ U.S. ___, 129 S. Ct. 251 (2008), and cert.

denied, ___ U.S. ___, 129 S. Ct. 902 (2009).

To prove that Finch violated 21 U.S.C. § 841(a)(1) by possessing with the

intent to distribute 50 grams of crack cocaine, the government had to show

knowledge, possession, and intent to distribute. See Garcia-Bercovich, 582 F.3d at

1237. Knowledge can be shown by the surrounding circumstances. See United

States v. Poole, 878 F.2d 1389, 1392 (11th Cir. 1989) (per curiam). Possession

may be demonstrated by evidence that the defendant owned, or had dominion and

control over, the drugs or the premises housing the drugs. See id. An intent to

distribute may be proven through circumstantial evidence, including the quantity of

drugs and the existence of scales and other drug paraphernalia commonly used in

drug distribution. See id.

Here, the record contained sufficient evidence for a jury to find beyond a

reasonable doubt that Finch and Askew conspired to possess with the intent to

distribute at least 50 grams of crack cocaine. As Askew concedes, the evidence

established that the McCoy house was a crack house used for drug distribution.

This evidence included more than 140 grams of crack cocaine and approximately

$10,000 in cash seized from the McCoy house, along with numerous items commonly used in the drug distribution business, such as digital scales. Furthermore, a jury could reasonably infer that the surveillance cameras and loaded firearms were security measures to protect the illegal drugs.

Contrary to Askew's contention, the evidence did not merely establish that the McCoy house was a gathering place for various people to sell and use drugs. There was also sufficient evidence that Askew and Finch had agreed to sell crack cocaine. Long testified that she purchased crack cocaine numerous times from both Finch and Askew at the McCoy house. The keys to the McCoy house were found in Askew's residence, indicating his dominion over the items inside. Moreover, Askew exercised control over the McCoy house and the drugs by deciding who could enter. Finch likewise exerted dominion over the drugs, as evidenced by the fact that authorities found her alone in the McCoy house. The jury could reasonably infer that Askew would not have left Finch alone with all of the drugs and money unless they had conspired with each other to sell the crack cocaine. Thus, the large quantity of drugs and cash controlled by Askew and Finch supported a reasonable inference that they knowingly participated in a conspiracy to sell those drugs. See United States v. Molina, 443 F.3d 824, 829 (11th Cir. 2006) (concluding that the large quantity of money found in the defendant's closet,

in addition to the drugs and a digital scale located in the defendant's bedroom, established that he knowingly participated in a conspiracy to possess cocaine with the intent to distribute it).

Long's observation of Finch and Askew talking and counting money together at the McCoy house provided additional evidence that they were acting in concert. Askew assails Long's testimony as contradictory, and both Finch and Askew emphasize that Long herself sold drugs. It was up to the jury to assess her credibility, however, and to choose between different constructions of the evidence. See id. at 828; United States v. Thompson, 473 F.3d 1137, 1142 (11th Cir. 2006) ("The jury gets to make any credibility choices, and we will assume that they made them all in the way that supports the verdict."). Having heard Long's testimony and evaluated her truthfulness, the jury determined that she was believable, a determination that Finch and Askew have not shown to be unreasonable. See Molina, 443 F.3d at 828 (instructing that we must accept the jury's reasonable credibility determinations).

Similarly, the jury was free to reject Askew and Finch's argument that they were merely present at the crack house and never actually agreed to sell crack cocaine. While mere presence cannot by itself establish a person's knowing participation in a conspiracy, it is "material, highly probative, and not to be

8

discounted." Westry, 524 F.3d at 1213 (quotation marks and citation omitted). Moreover, "the circumstances surrounding a person's presence at the scene of conspiratorial activity" may be "so obvious that knowledge of its character can fairly be attributed to him." Molina, 443 F.3d at 829. Such is the case here where Askew and Finch routinely sold crack cocaine at a house filled with drugs, money, drug paraphernalia, loaded firearms, and surveillance cameras. Their presence at the house was thus highly probative of their knowing participation in a criminal scheme.

Additionally, the evidence went beyond Askew and Finch's mere presence at the crime scene. Long testified that she purchased crack cocaine from both individuals on multiple occasions and saw them counting money together at the McCoy house. A letter from Finch's brother also mentioned a drug deal involving "Q", one of Askew's nicknames, that Finch was supposed to execute. Viewed in tandem, the evidence demonstrated that Finch and Askew actively and knowingly participated in the charged conspiracy. See Westry, 524 F.3d at 1213-14 (rejecting an innocent bystander defense where the defendant participated in an undercover drug purchase and associated with a co-conspirator at a residence where drug transactions occurred).

The evidence was also sufficient to establish Finch's guilt on the possession

count.  A person who exercises dominion and control over a residence containing concealed contraband is deemed to have constructive possession of the contraband. See Poole, 878 F.2d at 1392.  In Poole, the police found cocaine under the couch on which the defendant was lying, along with money and a scale containing some cocaine in plain view.  See id.  Although Poole did not have exclusive control over the premises, her ownership and control over the house was sufficient to establish constructive possession of the cocaine.  See id.  Similarly, Finch did not have exclusive control over the McCoy house, but she was left in charge of the premises and apprehended by authorities in close proximity to crack cocaine and other indicia of drug trafficking in plain view.  Because Finch exerted dominion and control over the premises and the illegal drugs, a jury could reasonably find that, at a minimum, Finch constructively possessed the crack cocaine.  See id.  With respect to the knowledge element, a jury could reasonably infer that she was attempting to escape through the back door because she knew the house contained contraband.  There was also ample evidence that she knowingly intended to distribute the drugs, including the evidence that she regularly sold crack cocaine to Long.  When viewed in the light most favorable to the government, the evidence was sufficient for the jury to find beyond a reasonable doubt that Finch possessed with intent to distribute at least 50 grams of crack cocaine.

10

B.  Admission of Evidence Related to Keys

Next, Askew argues that the district court erroneously admitted evidence related to keys that were seized from his personal residence.  According to Officer Battles, keys found in Askew's home matched the new locks on the door of the McCoy house on 21 June 2007 as well as some old locks removed after the initial search of the house on 1 June 2007.  Askew filed a motion in limine to exclude the evidence concerning these keys on grounds that the keys were irrelevant to the charged conspiracy because they were discovered after the conspiracy had ended on 1 June 2007.  The court denied the motion before trial, but Askew did not specifically object to the evidence of the keys and locks when they were introduced at trial.

Ordinarily, we review a district court's evidentiary ruling for abuse of discretion.  United States v. Baker, 432 F.3d 1189, 1202 (11th Cir. 2005).  The government contends that our review is limited to plain error, however, because Askew failed to object to the testimony or admission of the keys during trial.  We agree.  "The overruling of a motion in limine is not reversible error, only a proper objection at trial can preserve error for appellate review."  United States v. Gari, 572 F.3d 1352, 1356 n.2 (11th Cir. 2009) (quotation marks and citation omitted).  Thus, in order to obtain relief, Askew must show (1) error, (2) that was plain, (3)

11

that affected his substantial rights, and (4) that seriously affected the fairness, integrity, or reputation of the judicial proceedings. See Baker, 432 F.3d at 1203.

We find no error, plain or otherwise. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevant evidence is generally admissible. See Fed. R. Evid. 402. Here, the keys to the McCoy house were relevant and admissible to show that Askew had unfettered access to the crack cocaine and cash inside the McCoy house. The evidence demonstrated that Askew exerted some control over the premises containing the crack cocaine, thus making it more probable that he conspired to possess those drugs with the intent to sell them. That Officer Battles discovered the keys a few weeks after the charged conspiracy had ended does not preclude their admissibility. A reasonable jury could conclude that Askew possessed the keys to the old locks during the time frame of the alleged conspiracy.

Askew also raises on appeal Officer Battle's testimony during cross-examination that he failed to photograph or inventory the keys before matching them to the locks. Askew suggests that Officer Battles' unprofessional handling of the keys supports a finding that admission of the evidence was prejudicial error.

12

However, Askew cites no legal authority for this argument. To the extent he is attempting to raise a new basis for the exclusion of the evidence, it is well-established that we will not consider new legal theories and arguments advanced for the first time on appeal. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004). We find no reason to depart from this rule here. See id. at 1332 (noting the limited circumstances under which we will entertain a new argument, including that the issue involves a pure question of law and a refusal to consider it will result in a miscarriage of justice).

Accordingly, we conclude that the district court correctly admitted the evidence related to the keys found in Askew's residence.

C. Askew's Sentence

In addition to his conviction, Askew appeals his 240-month sentence as being procedurally and substantively unreasonable. We review the reasonableness of a sentence under a deferential abuse-of-discretion standard. See United States v. Livesay, 525 F.3d 1081, 1090-91 (11th Cir. 2008).

1. Procedural Reasonableness

A sentence is procedurally reasonable if it is free of significant procedural error. See id. at 1091. Examples of procedural errors include miscalculating the guideline range, treating the guidelines as mandatory, failing to consider all of the

13

factors in 18 U.S.C. § 3553(a), inadequately explaining a deviation from the guideline range, or basing the sentence on clearly erroneous facts. Id.

None of these procedural errors are present in this case. Askew does not dispute the district court's calculation of his guideline range or assert that the court treated the guidelines as mandatory. Nor does Askew explicitly argue that the court failed to consider all of the § 3553(a) factors. However, he does question whether the sentencing judge, who did not preside at Askew's trial, read the trial transcript or his sentencing memorandum, which requested a 10-year sentence based on Askew's personal history and other § 3553(a) factors. The government acknowledges that the trial transcript was filed after Askew's sentencing hearing. As the government points out, though, the court considered and adopted the factual statements in the pre-sentence report, which recited the evidence introduced at trial.

In regard to Askew's sentencing memorandum, which was filed a week before the sentencing hearing, Askew's attorney specifically asked the court to consider this memorandum along with the guidelines and Askew's age. The court responded, "All right." Doc. 91 at 3. Before sentencing Askew, the court noted its duty to consider each § 3553(a) factor, including (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, and (3) the need

14

for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect society from future crimes. Though the district court did not specifically mention Askew's personal characteristics as detailed in his sentencing memorandum, "we cannot say that the court's failure to discuss this 'mitigating' evidence means that the court erroneously 'ignored' or failed to consider this evidence" in determining Askew's sentence. United States v. Amedeo, 487 F.3d 823, 833 (11th Cir. 2007). Based on the record, we conclude that the court considered the § 3553(a) factors as required.

Askew also challenges the sentencing court's explanation for its variance from the guideline range. The district court stated as follows:

> It is clear to me that you had quite a drug operation going on. And I don't want to say[,] I don't want to waste my breath, but I think you are fully aware that you were exchanging the lives of other people for your own profit, and that's regrettable. I don't think the guidelines sufficiently reach the level that you should be punished for this offense or accomplish the sentencing goals set forth in the federal statutes.
>
> It is my intention to sentence you to 240 months in this case. I think that is appropriate when I consider the factors in the sentencing guidelines and the factors in the federal sentencing statutes.

Doc. 91 at 6. After Askew objected to the sentence as being excessive, the court added the following statement:

> And, again, I note for the record that I just sentenced his co-defendant to 240 months as well, and I just want to make sure that's in

15

the record. And it is apparent to me that she is pitiful, and that this fellow right here had all – he is obviously smart, obviously got a lot on the ball, and I think that the guideline range just isn't sufficient, didn't sufficiently indicate the appropriate punishment that he should receive.

Id. at 8. Askew takes issue with the court's statement that Askew had "quite a drug operation going on," asserting that there was no evidence at trial that he was a leader or principal in a drug conspiracy. The court's statement was not clearly erroneous, however, because it accurately reflected the fact that Askew participated in a drug conspiracy involving a significant quantity of crack cocaine. Similarly, we disagree with Askew's suggestion that the court's statement that Askew was "exchanging the lives of other people for [his] own profit" somehow implied that someone had died or suffered violence. Rather, the court's statement reflected the well-documented negative impact of crack cocaine on a person's life. We therefore conclude that the district court adequately explained its deviation from the sentencing guidelines.

As no procedural error has been shown, Askew's sentence was procedurally reasonable.

2. Substantive Reasonableness

Askew further contends that his sentence is substantively unreasonable because (1) Finch received the same sentence despite her additional conviction on

16

the possession count and a prior drug conviction; (2) the sentence did not adequately reflect Askew's personal history and characteristics, such as his military service, his 30-year marriage, his financing of a college education for his two children, and his inability to work due to a disability; (3) Askew was at most a peripheral user of drugs, and there were no guns or violence connecting him to the McCoy house; and (4) his above-guidelines sentence was unnecessary to afford adequate deterrence and protect the public from further crimes.

In analyzing the substantive reasonableness of a sentence, we must assess the totality of the circumstances to determine if the sentence constitutes an abuse of discretion. See Livesay, 525 F.3d at 1091. The mere fact that a sentence is outside of the guidelines range does not render the sentence presumptively unreasonable. Id. In order to vacate a sentence because of a variance, we must have a "definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008) (quotation marks and citation omitted). Moreover, the fact that we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).

After considering all the circumstances in this case, we find no clear error of judgment in the district court's weighing of the § 3553(a) factors. The evidence at trial established that Askew maintained control over a crack house at which numerous individuals bought, sold, and used crack cocaine. Askew himself sold crack cocaine and is an admitted drug user. He also has a prior conviction for possession with intent to distribute cocaine, and for using or carrying a firearm during and in relation to a drug trafficking offense. These factors weigh in favor of a significant sentence to reflect the seriousness of the crime, afford adequate deterrence, and protect the public from future crimes. See Amedeo, 487 F.3d at 828, 833 (concluding that a 120-month sentence was reasonable where the guidelines range of 37-46 months did not adequately reflect the seriousness of the crime). The fact that Askew is a military veteran with a stable marriage and two college-educated children does not warrant a lower sentence. To the contrary, it shows that Askew had the capability and personal support to lead a legitimate lifestyle.

We also find no merit in Askew's argument that his sentence is unreasonable because his co-defendant received an identical sentence. Askew ignores the fact that, like Finch, he has a prior drug conviction. As the government points out, had Askew committed the instant offenses after his prior drug conviction had become

final, he would have been subject to a 20-year mandatory minimum sentence, as was Finch. See 21 U.S.C. § 841(b)(1)(A). Furthermore, although Finch was convicted of an additional count for possession, both were found guilty in the same case of conspiring to possess with the intent to distribute at least 50 grams of crack cocaine. Pursuant to 18 U.S.C. § 3553(a)(6), a sentence must "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Given their similar conduct and criminal history, the district court was justified in sentencing both defendants to the same term of imprisonment.

We therefore conclude that Askew's sentence was reasonable in light of the § 3553(a) factors and circumstances of his case. No abuse of discretion has been shown.

### III. CONCLUSION

In sum, there was sufficient evidence to support Finch and Askew's convictions for the charged conspiracy. The evidence was likewise sufficient to sustain Finch's conviction on the possession count. We also conclude that the district court correctly admitted the evidence related to the keys found in Askew's residence, and that the court imposed a reasonable sentence in Askew's case. Accordingly, we AFFIRM Finch and Askew's convictions and sentences.

**AFFIRMED.**