[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 10-15036; 10-15045; 10-15046
Non-Argument Calendar
_____

D.C. Docket Nos. 1:09-cr-20610-JAL-1,
1:09-cr-20610-JAL-5,
1:09-cr-20610-JAL-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SIXTO FIGUEROA,
MANUEL GARCIA,
ROLANDO HERRERA,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____
(August 29, 2012)

Before TJOFLAT, KRAVITCH and EDMONDSON, Circuit Judges.

PER CURIAM:

Sixto Figueroa appeals his convictions and concurrent prison sentences of 71 months for one count of conspiring, in violation of 18 U.S.C. § 1349, to commit bank fraud, in violation of 18 U.S.C. § 1344 (Count 1), and seven counts of bank fraud (Counts 2 through 8). Manuel Garcia and Rolando Herrera appeal their convictions for the Count 1 conspiracy; Garcia also appeals his convictions for bank fraud (Counts 6 and 8); Herrera also appeals his convictions for bank fraud (Counts 3 and 7).

Figueroa seeks a new trial on the ground that District Court abused its discretion in permitting the Government to introduce at trial evidence of prior bad acts under Federal Rule of Evidence 404(b). He challenges his sentences on two grounds: (1) the District Court erred in increasing his offense level under the Sentencing Guidelines by four levels because he was a leader and organizer of the conspiracy; (2) the court failed to comply with the requirements of 18 U.S.C. § 3553(a) in fashioning his sentences.

Garcia and Herrera seek judgments of acquittal on the ground that the evidence was insufficient to convict.

I.

The criminal conduct in this case involved fraudulent representations made to obtain lot loans from Wachovia Bank for nominee or "straw" buyers for seven

2

Port Labelle properties owned by Florida Development Corporation ("FDC"). Figueroa and his wife and co-defendant, Susy Figueroa (who has not joined Figueroa in appealing), owned and operated FDC. In 2002, Figueroa and Susy Figueroa, his wife bought 27 lots from Real Estate Properties, a company owned by Susy's mother; they intended to sell the lots and construct houses on them. By the end of 2005, however, they were in such dire economic straits that the lots were about to be foreclosed. To rescue themselves from this predicament, they devised a scheme to obtain fraudulent mortgage loans from Wachovia for buyers who could not qualify for a bank loan and would not be making the required down payment at the closing of the loan. The scheme worked, and between March 2006 and March 2007, Wachovia made loans to seven unqualified buyers, who purchased lots on "Springview" at artificially inflated values.[1] The loans were for 80-90% of the appraised value of the lots. The inflated values were created this way: (1) Figueroa "gifted" three nearby lots to family members in transactions that appeared to be legitimate sales; (2) the amount of the documentary stamps affixed to the warranty deeds conveying the lots indicated that the lots had sold for $140,000 to $170,000 (much more than they were actually worth); and (3) the

---

[1] The seven sales to the unqualified buyers were the subjects for the seven bank fraud counts alleged in the indictment.

3

bank's appraisers used the sham sales as comparables in arriving at the fair market values of the seven lots at issue. And to establish a borrower's financial ability to make the down payment (between 10 and 20% of the sales price), the conspirators provided Wachovia with false documents indicating that the borrower was capable of making the down payment at closing and the payment payments required by the mortgage note. The bank's losses were calculated for sentencing purposes at $792,707. Against this background, we address the arguments appellants advance in these appeals.

## II.

Prior to trial, Figuero moved the District Court in limine to exclude Rule 404(b) evidence the Government stated that it intended to introduce at trial. The evidence included (1) FDC's purchase of the 27 lots in October 2002 from Real Estate Properties, which bought them in April of that year; (2) Herrera's purchase of the property at 457 Glen Brook Drive in Lake Worth in March 2005; (3) Herrera's transfer of that property to himself and Figueroa in November 2005; and (4) Herrera and Figueroa's transfer of the property to themselves and members of the Figueroa family in March 2006. The Government contended that the two transactions listed in (1) were admissible as intrinsic evidence because they explained how the Figueroas came into possession of the 27 lots at issue. (2)

4

would be admissible only against Herrera, and (3) and (4) established the relationship between Herrera and the Figueroas.

Figueroa also moved the court to exclude (5) evidence that, in 2000, Figueroa approached codefendant Garcia-Montes to act as closing agent in a real estate transaction and to release loan proceeds early so the seller could use the money to satisfy the buyer's cash-to-close obligation; (6) evidence that Figueroa previously told Garcia-Montes that he could create and obtain fake financial documents, including false W-2s and pay stubs, for submission to the bank so the bank would conclude that the loan applicant was financially able to make the required payment at closing and thereafter the mortgage loan; and (7) a tape-recorded conversation in which Figueroa told Garcia-Montes that he had a scheme to wipe out recorded mortgages to avoid paying the lender. The District Court denied Figueroa's motions and ruled the evidence admissible.

Rule 404(b) evidence of an uncharged "crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Such evidence may be admissible for other purposes, however, as, for example, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*

5

> For evidence of other crimes or acts to be admissible under Rule 404(b), (1) it must be relevant to an issue other than defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403.

*United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). A defendant who enters a not guilty plea makes his intent to commit the act with which he is charged a material issue and imposes a substantial burden on the Government to prove intent, which may be done by qualifying Rule 404(b) evidence. *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998).

Relevant evidence may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403. Rule 403 should be invoked sparingly, though, and the balance should be struck in favor of admissibility. *Tinoco*, 304 F.3d at 1120. In reviewing Rule 403 determinations, we "look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Id.* (quotation omitted). "Factors to be considered include whether it appeared at the commencement of trial that the defendant would contest the issue of intent, the overall similarity of the charged

6

and extrinsic offenses, and the temporal proximity between the charged and extrinsic offenses." *Edouard*, 485 F.3d at 1345.

The District Court did not abuse its discretion in admitting the challenged Rule 404(b) evidence because the probative value of the evidence was not substantially outweighed by its prejudicial value. The evidence was relevant to show Figueroa's intent to defraud Wachovia. Additionally, the prior acts were factually similar to the acts that led to the charged offenses and were not temporally remote, for the prior acts all occurred within a matter of a few years. Moreover, the court gave the jury a limiting instruction, which informed it that the evidence of the prior acts could only be considered for a limited purpose, and that those prior acts could not be relied on to prove that Figueroa committed the charged offenses.

## II.

Garcia and Herrera were each convicted of the conspiracy charge and two substantive bank fraud counts. They argue that the evidence was insufficient to convict them of any of the offenses.

We review *de novo* whether the evidence was sufficient to sustain a conviction. *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). We take the evidence in the light most favorable to the Government, resolving any

conflicts in favor of its case.  *See United States v. Frank*, 599 F.3d 1221, 1233 (11th Cir.), *cert. denied*, 131 S.Ct. 186 (2010).

In assessing the sufficiency of the evidence, "the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt."  *United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006).  We assume that the jury made credibility choices in a way that supports the verdict.  *Id.*  "Because the jury is free to choose among reasonable constructions of the evidence, the evidence may be sufficient even if it is not entirely inconsistent with conclusions other than guilt."  *United States v. Ndiaye*, 434 F.3d 1270, 1294 (11th Cir. 2006).

To obtain a 18 § 1344(1) conviction, the Government must prove: (1) that the defendant intentionally participated in a scheme to defraud another of money or property; and (2) that the intended victim of the scheme was a federally-insured financial institution.  *See United States v. McCarrick*, 294 F.3d 1286, 1290 (11th Cir. 2002).  To obtain a conviction under 18 U.S.C. § 1344(2), the Government must prove three elements: "(1) that a scheme existed to obtain moneys, funds, or credit in the custody or control of a federally-insured bank by fraud; (2) that the defendant participated in the scheme by means of material false pretenses, representations, or promises; and (3) that the defendant acted knowingly."  *Id.*  To

8

satisfy either subsection, "the government must prove specific intent to defraud." *United States v. Goldsmith*, 109 F.3d 714, 716 (11th Cir. 1997). To obtain a conspiracy conviction under 18 U.S.C. § 1349, the Government must prove that the defendant "knew of and willfully joined in the unlawful scheme to defraud." *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009).

The evidence was sufficient to convict Garcia on all three counts. Based on the circumstantial evidence of the loan application process and what took place at closing, a reasonable jury could infer Garcia's knowledge and intent to defraud Wachovia. No honest person could believe that it was possible to purchase property without any significant initial monetary commitment in the face of the lender's closing documents that spelled out the commitment.

Testimony clearly established that materially false representations regarding Garcia's income and bank account balances were made to Wachovia during the loan application process for the two loans he acquired. Additionally, the settlement statements at closing indicated that the buyer, Garcia, had made the down payment. However, Garcia-Montes testified that the down payment was actually paid by the Figueroas, the sellers, which was a violation of Wachovia's policy. Sellars's testimony also established that, around the time of closing, Garcia received payments from the Figueroas. Officer Tamayo's testimony

9

establishes that, when interviewed by the authorities, Garcia lied and stated that no one gave him money to purchase or pay for the properties.

Contrary to Garcia's position on appeal, the jury received evidence that Garcia was present at closing. Garcia-Montes testified that a copy of Garcia's driver's license was contained in the closing files in order to verify his identity at closing. Officer Tamayo testified that when she interviewed Garcia, he told her that he had attended closing and signed the documents, but that he had not brought any cash to the closing.

The evidence was also sufficient to convict Herrera on the three counts. A reasonable jury could have found from the evidence that Herrera was involved knowingly with the scheme to make misrepresentations to Wachovia to obtain two lot loans.

Sottosanti's testimony established that Herrera made materially false representations regarding his income and bank account balances to Wachovia during the loan application process to obtain the loans to buy the lots. The settlement statements at both closings indicated that Herrera, the buyer, paid the down payment. Garcia-Montes testified that each down payment was actually paid by the sellers, the Figueroas, which was in violation of Wachovia's policy.

Contrary to Herrera's argument on appeal, there was evidence presented that

10

Herrera was present at closing.  Garcia-Montes testified that a copy of Herrera's driver's license was contained in closing files in order to verify his identity at closing.  Additionally, during Sellars's testimony, the jury was shown copies of Herrera's signature on the closing documents, the driver's license, and bank account signature cards, as well as the tax returns submitted with his loan applications and those actually submitted to the IRS.  The jury could compare the signatures and infer that Herrera did in fact sign the closing documents, which contained the materially false representation about who was paying the down payment.

The Government also introduced evidence under Rule 404(b) that, in March 2005, Herrera engaged in similar conduct in obtaining a loan to purchase property at 457 Glen Brook Drive.  Herrera subsequently transferred this property to himself and Figueroa and three days prior to this conveyance, he obtained a prime equity line of credit, using the Figueroas' house as collateral.  While the jury could not rely on these acts as evidence that Herrera committed the charged offenses, the jury was allowed to rely on this evidence to show knowledge and intent to defraud Wachovia.

## III.

Figueroa contends that the District Court erred in increasing his offense

11

level pursuant to  U.S.S.G. § 3B1.1(a) on the ground that he was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive; therefore, his sentence is procedurally unreasonable.  The commentary to § 3B1.1 contains a list of factors the court should consider in determining whether a defendant played a leadership role or organizational role in the criminal activity, including: the exercise of decision making authority, the nature of the participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.  *Id.*, comment. (n.4).

We review the reasonableness of a sentence under a "deferential abuse-of-discretion standard of review."  *Gall v. United States*, 552 U.S. 38, 52, 128 S.Ct. 586, 598, 169 L.Ed.2d 445 (2007).  We may "set aside a sentence only if we determine, after giving a full measure of deference to the sentencing judge, that the sentence imposed truly is unreasonable."  *United States v. Irey*, 612 F.3d 1160, 1191 (11th Cir. 2010) (*en banc*), *cert. denied*, 131 S.Ct. 1813 (2011).

The sentencing judge is required to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" listed in 18 U.S.C. § 3553(a)(2), including the need to reflect the seriousness of the offense, promote

respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. *See* 18 U.S.C. § 3553(a)(2). In imposing a particular sentence, the court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)-(7).

Although § 3553(a)(6) requires the court to avoid unwarranted sentencing disparity, concerns about disparate sentences among co-conspirators are not implicated where the defendant and his codefendants are not similarly situated. *See United States v. Williams*, 526 F.3d 1312, 1323 (11th Cir. 2008). "Disparity between sentences imposed on codefendants is generally not an appropriate basis for relief on appeal." *United States v. Regueiro*, 240 F.3d 1321, 1325-26 (11th Cir. 2001).

The record fully supports the District Court's finding that Figueroa was a leader and organizer of the conspiracy; hence, the court properly enhanced his offense level under § 3B1.1. Figueroa's concurrent sentences of 71 months are not substantively unreasonable because the district court considered the comments

of the parties, the presentence report and the § 3553(a) sentencing factors. The sentences are not disparate when compared with the sentence his wife received because he was the organizer and leader of the activity; she was not.

IV.

Figueroa's convictions and sentences are AFFIRMED. Garcia's and Herrera' convictions are AFFIRMED.

SO ORDERED.