[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 21, 2010
JOHN LEY
CLERK

No. 09-12148
Non-Argument Calendar

_____

D. C. Docket No. 08-00270-CR-T-30-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEAN EVENS BAPTISTE,
a.k.a. Jean Evans Baptiste,
HARDAWAY VOLCY,
a.k.a. Hardaway Valcy,
SHELDON SHORTER,
a.k.a. Anthony Dubois,
a.k.a. Marco Davis,
a.k.a. Shelly Shorter,
a.k.a. Denzeil Sawyer,
a.k.a. Jay,
a.k.a. O'Neil Shorter,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(July 21, 2010)

Before EDMONDSON, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

Jean Evens Baptiste, Sheldon Shorter, and Hardaway Volcy appeal their convictions following a jury trial. Shorter also appeals his sentence of 328 months in prison, and Volcy appeals his sentence of 97 months. Baptiste and Volcy were found guilty of one count of conspiracy to distribute and possess with intent to distribute marijuana, 21 U.S.C. §§ 846, 841(b)(1)(A), and one count of possession with intent to distribute 100 kilograms or more of marijuana, 21 U.S.C. § 841(a)(1) and (b)(1)(B). They were arrested when police, acting on a tip from an informant, stopped them driving a tractor-trailer loaded with over 700 kilograms of marijuana that was concealed behind boxes of frozen cookie dough. Shorter, the ringleader of the operation and the intended recipient of that shipment and many others like it, was found guilty of one count of conspiracy to distribute and possess with intent to distribute marijuana, 21 U.S.C. §§ 846, 841(b)(1)(A), and one count of possession with intent to distribute 1,000 or more kilograms of marijuana, 21 U.S.C.

2

§ 841(a)(1) and (b)(1)(D).  We affirm Shorter's convictions and all three

defendants' sentences.  We find no error in the convictions of Baptiste and Volcy,

but remand for the limited purpose of correcting clerical errors in their judgments.

I.

Baptiste, who was driving the truck, contends that the district court erred by

denying his motion to suppress the marijuana found in it.  He argues that the police

did not have justification for the initial traffic stop, that they unreasonably

prolonged the stop, and that they exceeded the scope of his consent to search the

truck by cutting into a cellophane-wrapped package to verify that it contained

marijuana.[1]

The district court's ruling on a motion to suppress evidence is reviewed as a

mixed question of law and fact.  See United States v. Perkins, 348 F.3d 965, 969

(11th Cir. 2003).  We review the court's findings of fact for clear error and its

application of the law to the facts de novo.  Id.  "The facts are construed in favor of

the party that prevailed below."  Id.

A confidential informant told DEA agents that a large shipment of marijuana

---

[1] Volcy, who rode in the truck with Baptiste, attempts to adopt Baptiste's argument on the motion to suppress the marijuana.  Volcy is not entitled to a ruling on the merits of that motion because in the district court he did not file a pretrial motion to suppress nor join Baptiste's motion, and he therefore failed to preserve the issue.  See Fed. R. Crim. P. 12(b)(3)(C), 12(e); United States v. Nix, 438 F.3d 1284, 1288 (11th Cir. 2006) (defendant failed to preserve challenge to search warrant by filing pretrial motion to suppress).

was due to arrive by truck at Shorter's warehouse. He told the agents that previous deliveries had come in a white trailer pulled by a blue tractor, but he was not sure it would be the same truck this time. The agents arranged with the Florida Highway Patrol to intercept the truck on its way to the warehouse. At the appointed time, a state police officer waited on the interstate where the truck was expected to exit. The informant talked to Volcy on a cell phone, instructing him and Baptiste how to get off the highway and find their way the last few miles to the warehouse, while simultaneously recording their conversation and relaying the truck's current location to authorities. Although Baptiste's truck was a different color than the one previously described, it was the only tractor-trailer the officer saw on the road at the right time. The officer saw the truck take the correct exit and then make several turns that appeared to match the informant's directions. Noting the truck was drifting outside of its lane, the officer pulled it over to write a traffic citation.

A traffic stop is a "seizure" within the meaning of the Fourth Amendment. United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001). Police may stop a vehicle and briefly detain its occupants in order to investigate a reasonable suspicion that they are involved in criminal activity. See Terry v. Ohio, 392 U.S. 1, 19–21, 88 S.Ct. 1868, 1879–80 (1968); United States v. Lindsey, 482 F.3d 1285, 1290 (11th Cir. 2007). To justify such a detention, the police must "be able to

4

point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21, 88 S.Ct. at 1880. "Reasonable suspicion" is determined from the totality of the circumstances and from the collective knowledge of the officers involved in the stop. United States v. Williams, 876 F.2d 1521, 1524 (11th Cir. 1989). The reasonable suspicion standard "is considerably less demanding than proof of wrongdoing by a preponderance of the evidence and less than probable cause," but nonetheless requires officers to "articulate facts which provide some minimal, objective justification for the stop." Id. Authorities may rely on an informant's tip as the basis for reasonable suspicion, but there should be sufficient corroboration, such as an ability to predict the defendant's future actions. See United States v. Lee, 68 F.3d 1267, 1271 (11th Cir. 1995) (citing Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412 (1990)). Officers may also stop a vehicle upon observing probable cause for a traffic violation, even if their real purpose is to investigate some other crime. See Whren v. United States, 517 U.S. 806, 813, 819, 116 S.Ct. at 1769, 1774, 1777 (1996); United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999).

Baptiste argues that the officer lacked a reasonable suspicion that his truck was the one identified by the informant because it was the wrong color, and that the officer lacked probable cause to pull him over for a traffic citation because he

5

had not actually violated Florida's lane usage statute. See Fla. Stat. § 316.089. We need not construe the meaning of Florida's Uniform Traffic Control Law. Regardless of whether there was a traffic violation, the officer performed a legal stop because he had a reasonable suspicion, as a result of the informant's real-time conversation with Volcy and his accurate prediction of the truck's movements, that the tractor-trailer driven by Baptiste was transporting marijuana.

After the officer pulled over the truck, he saw Volcy attempting to disassemble a cell phone. Both defendants seemed nervous, and they gave inconsistent answers to his questions about their destination. The officer also observed that the refrigerated trailer was not set at the correct temperature for the frozen foodstuffs the defendants told him they were hauling. He put Baptiste and Volcy in the back of his car while he called for a drug-sniffing dog.[2] Because the dog and its handler had to be brought in from a neighboring town, this prolonged the duration of the stop by about twenty minutes. Once a legitimate traffic stop is made, it must last no longer than is necessary to effectuate the purpose of the stop. United States v. Pruitt, 174 F.3d 1215, 1220 (11th Cir. 1999). Baptiste argues twenty minutes was too long to detain him for the purpose of writing a traffic

---

[2] Unbeknownst to Baptiste and Volcy, the conversation they had while sitting in the back of the police cruiser was secretly recorded. The transcript of that conversation makes it clear they knew what the police would find inside the trailer.

6

citation. Perhaps, but the officer had reasonable suspicion that the truck was carrying a large shipment of marijuana, and calling for a drug-sniffing dog was necessary to confirm or dispel that suspicion. The time it took for the dog and its handler to arrive was not unreasonably long. See Simmons, 172 F.3d at 778 (detention of 17 to 26 minutes while officer checked for outstanding warrants was not unreasonable).

When the dog arrived, it alerted outside the front end of the trailer. The officer told Baptiste he suspected the presence of marijuana and asked for consent to search the truck. Baptiste agreed to the search. Inside the trailer the officer found numerous packages wrapped in cellophane and duct tape that were concealed behind boxes of frozen cookie dough. He cut into one of those packages and confirmed that it contained marijuana.

Baptiste argues that the scope of his consent to search the truck did not extend to permission to cut into a wrapped package. A search may be unreasonable, even when an individual consents to that search, "when an officer does not conform to the limitations imposed by the person giving consent." United States v. Zapata, 180 F.3d 1237, 1242 (11th Cir. 1999). "When an individual provides a general consent to search, without expressly limiting the terms of his consent, the search is constrained by the bounds of reasonableness: what a police

officer could reasonably interpret the consent to encompass." Id. (quotation omitted). Permission to search an area for narcotics "may be construed as permission to search any compartment or container within the specified area where narcotics may be found," but officers may not intentionally damage the places or things to be searched. United States v. Martinez, 949 F.2d 1117, 1119 (11th Cir. 1992). The permissible scope of the search generally includes any area where the item in question may be found, even if the search requires "separate acts of entry or opening," including "forcing open locked compartments or containers." Id. at 1120–21 (consent to search warehouse reasonably included consent to search locked trunk of car parked inside it, even though police had to force it open).

The officer did not exceed the scope of Baptiste's consent by cutting into the package, because it could have contained the drugs for which Baptiste had given consent to search. See Martinez, 949 F.2d at 1119. By that point the dog had already detected the smell of marijuana, and the officer had recognized the wrapped bundles as typical of the packaging often used by drug smugglers. Accordingly, we affirm the denial of Baptiste's motion to suppress and we affirm his and Volcy's convictions.

## II.

Shorter, who is black, argues that his Sixth Amendment right to a jury drawn

from a fair cross-section of the community was violated because the venire did not include a representative number of African-Americans.[3]  We review de novo constitutional challenges to the jury selection process based on the fair cross-section requirement.  United States v. Grisham, 63 F.3d 1074, 1077 (11th Cir. 1995).  The Sixth Amendment guarantees a criminal defendant the right to be tried by a jury "drawn from a fair cross-section of the community."  Id. at 1078.  A defendant claiming a violation of that right makes a prima facie case by showing (1) that the underrepresented group is distinctive, (2) that the group's representation in the venire is "not fair and reasonable in relation to the number of such persons in the community," and (3) that the underrepresentation is due to systematic exclusion in the jury-selection process.  Id.  Failure to establish any of these elements is fatal to a defendant's Sixth Amendment challenge.  See United States v. Clark, 562 F.3d 1158, 1163 (11th Cir. 2009).

We find Shorter's claim to be wholly without merit.  When the venire was seated, Shorter's counsel said the following:

> Your Honor, on behalf of my client, who is African-American, and the other two co-defendants who are African-American, we're making a challenge that the venire that is not a representative example of the community, nor is it statistically proportionate to African-Americans here.  We believe our

---

[3] Shorter claims that on the day of his voir dire the jury pool included only one African-American.  However, this fact is not in the record.  Nor are any facts at all about the racial composition of the jury pool or about the district court's procedures for assembling it.

9

client may be prejudiced by the present venire. And for the record I'm making that objection.

The court responded: "You have it for the record." Voir dire and jury selection then went forward with no further discussion of the matter. Shorter contends that the district court erroneously denied his objection and prevented him from presenting evidence to support it. However, the record does not show that Shorter ever tried to offer any such evidence. He objected to the composition of the jury pool but without any evidence to support his objection. It was Shorter's burden to make a prima facie showing of underrepresentation and systematic exclusion, and his failure to even attempt to do so is not error on the part of the court. See Clark, 562 F.3d at 1163; Grisham, 63 F.3d at 1077.

### III.

Shorter next argues that the evidence was insufficient to support his convictions. We review de novo the sufficiency of the evidence, "viewing the evidence in the light most favorable to the verdict." United States v. Thompson, 473 F.3d 1137, 1142 (11th Cir. 2006). "The jury gets to make any credibility choices, and we will assume that they made them all in the way that supports the verdict." Id. "[T]he issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt." Id. The testimony of a co-conspirator, even if uncorroborated, is sufficient to support a

10

conviction unless it is "incredible or otherwise insubstantial" on its face. United States v. Diaz, 248 F.3d 1065, 1093–94 (11th Cir. 2001).

Two co-conspirators testified extensively about the marijuana distribution enterprise and Shorter's leading role in it. Their testimony was corroborated by ledgers documenting some of the shipments, by marijuana actually seized from some of Shorter's associates, and by Shorter's own words in several phone conversations secretly taped by a government informant. The evidence proved that Shorter set up a connection with a marijuana supplier in Arizona, and recruited drivers and couriers to transport drugs and cash between there and Florida. On one occasion, Shorter chartered a private jet and flew west carrying duffel bags filled with cash. Although he did so using an alias, the jet's pilot identified him. Shorter supervised other associates who warehoused the marijuana at several locations in and around Tampa, distributed it to local dealers, and collected money owed. He took the lion's share of the proceeds, using some of the money to buy expensive sports cars. After police seized 80 pounds of marijuana from one of the warehouses, Shorter was caught on tape asking the informant what had happened to it and demanding payment for it. Even though Shorter did not handle the marijuana himself, the evidence at trial established his constructive possession by showing his "ownership, dominion, or control" over it and over the premises on

11

which it was concealed. See United States v. Montes-Cardenas, 746 F.2d 771, 778 (11th Cir. 1984). The evidence was more than sufficient for the jury to find Shorter guilty beyond a reasonable doubt on both the conspiracy and substantive possession counts.

IV.

Shorter also contends that the evidence did not support the district court's decision at sentencing to hold him responsible for more than 10,000 kilograms of marijuana. The district court accepted the PSR's calculation that Shorter had distributed 13,483.7 kilograms. This amount gave Shorter a base offense level of 36. See U.S.S.G. § 2D1.1(c)(2) (more than 10,000 but less than 30,000 kilograms of marijuana).

The district court's determination of the quantity of drugs used to establish a base offense level for sentencing purposes is reviewed for clear error. United States v. Simpson, 228 F.3d 1294, 1298 (11th Cir. 2000). "When a defendant objects to a factual finding that is used in calculating his guideline sentence, such as drug amount, the government bears the burden of establishing the disputed fact by a preponderance of the evidence." United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005). When the quantity of drugs seized does not reflect the scale of the offense, the district court must approximate the amount attributable to the

defendant, and "may base its computation on evidence showing the average frequency and amount of a defendant's drug sales over a given period of time." Id. However, the defendant's sentence must be based on "fair, accurate, and conservative" estimates of drug quantity, not mere speculation. Id. For sentencing purposes, a member of a drug conspiracy is liable not only for his own acts, but also for the reasonably foreseeable acts of co-conspirators in furtherance of the activity the defendant agreed to undertake. United States v. Ismond, 993 F.2d 1498, 1499 (11th Cir. 1993).

The evidence at trial established that the conspirators received shipments averaging at least 1,000 pounds of marijuana per month over a two-year period, which would add up to 24,000 pounds or 10,886 kilograms. This estimate is conservative, considering that two co-conspirators testified that an average shipment weighed between 1,200 and 1,500 pounds, and the fact that the marijuana seized from Baptiste and Volcy's truck weighed 1,561 pounds. In addition, the estimate does not include six or seven shipments of marijuana delivered in 1000-pound crates by air freight. Accordingly, the district court did not clearly err in holding Shorter responsible for more than 10,000 kilograms of marijuana.

V.

The district court also imposed a four-level enhancement on Shorter under

13

U.S.S.G. § 3B1.1(a) for being an "organizer or leader" of a criminal activity involving five or more participants. This gave him a total offense level of 40. Shorter argues the enhancement was error because he was merely a supplier of marijuana and not a leader of the conspiracy.

A district court's upward adjustment of a defendant's offense level under U.S.S.G. § 3B1.1 is a finding of fact reviewed only for clear error. United States v. Phillips, 287 F.3d 1053, 1055 (11th Cir. 2002). "[T]he ultimate determination of role in the offense is . . . a fundamentally factual determination entitled to due deference." United States v. De Varon, 175 F.3d 930, 938 (11th Cir. 1999). Factors to consider in determining whether the enhancement applies are: "(1) exercise of decision-making authority, (2) nature of participation in the commission of the offense, (3) recruitment of accomplices, (4) claimed right to a larger share of the fruits of the crime, (5) degree of participation in planning or organizing the offense, (6) nature and scope of the illegal activity, and (7) degree of control and authority exercised over others." United States v. Rendon, 354 F.3d 1320, 1331–32 (11th Cir. 2003); U.S.S.G. § 3B1.1 cmt. n.4. The government bears the burden of proving the defendant's aggravating role by a preponderance of the evidence. United States v. Yeager, 331 F.3d 1216, 1226 (11th Cir. 2003).

The evidence supports the district court's conclusion that Shorter was an

14

organizer or leader of the criminal conspiracy. He chartered a jet to fly bags of cash across the country, arranged for shipments of marijuana, supervised others who handled the marijuana directly, and took what he wanted from the proceeds. Two co-conspirators testified at trial that Shorter called the shots, and the evidence supports their testimony. The jury heard recorded phone conversations in which Shorter gave various orders to a co-conspirator, at one point telling him to pay a home visit to the mother of a buyer who owed him money in order to pressure him to pay. Accordingly, the district court did not clearly err by enhancing Shorter's sentence pursuant to U.S.S.G. § 3B1.1.

## VI.

Shorter finally contends that the district court failed to comply with 18 U.S.C. § 3553(c)(1) when it sentenced him to 328 months' imprisonment, the midpoint in the advisory guideline range of 292–365 months, without explaining its reason for choosing that particular sentence.

When a district court sentences a defendant within the guidelines, and the sentence range exceeds 24 months, the court must state its reason for imposing a sentence at a particular point within the range. 18 U.S.C. § 3553(c)(1); United States v. Williams, 438 F.3d 1272, 1274 (11th Cir. 2006). In doing so, the district court should "tailor its comments to show that the sentence imposed is appropriate,

15

given the factors to be considered as set forth in § 3553(a)." Bonilla, 463 F.3d at 1181. However, there is no requirement that the court "incant the specific language used in the guidelines" or that it expressly discuss each of the § 3553(a) factors. Id. at 1182. In Bonilla, we upheld a sentence when the district court allowed the parties to offer argument as to the § 3553(a) factors, heard the defendant's statement of remorse, stated that it had considered the § 3553(a) factors, and stated that the sentence was "neither greater nor lesser than necessary to achieve the statutory purposes of sentencing." Id. Here, the district court heard arguments from the attorneys, heard from Shorter himself, expressly acknowledged that it considered the § 3553(a) factors, and concluded that the sentence imposed was "sufficient but not greater than necessary to comply with the statutory purpose of sentencing." That is enough to comply with § 3553(c)(1).

VII.

Volcy argues that the district court erred by not giving him a minor-role reduction under U.S.S.G. §§ 2D1.1(a)(3) and 3B1.2 because he was less culpable than Baptiste in transporting the marijuana across the country. He describes his role as a "mere passenger" who only went along "for the ride" and had no idea that the tractor-trailer was hauling marijuana. That claim is belied by the conversation recorded between him and Baptiste while they sat in the back of a police cruiser

16

and watched the officers search the truck. In that conversation Volcy worried that the police would see "the thing" if they went far enough into the trailer, asked Baptiste how many boxes he had stacked on top of it, and exclaimed when he saw the drug-sniffing dog that they were "out of luck." He also told Baptiste that he destroyed the memory chip from his cell phone by smashing it with his teeth.

A defendant may receive a four-level reduction in his base offense level if his role in the offense can be described as "minimal," a two-level reduction if his role can be described as "minor," or a three-level reduction for cases falling in between. See U.S.S.G. § 3B1.2. A "minimal" participant is one who is "plainly among the least culpable of those involved in the conduct of a group." Id. § 3B1.2 cmt. n.4. The four-level reduction is intended to be used "infrequently." Id. A "minor" participant is one who is "less culpable than most other participants, but whose role could not be described as "minimal." Id. § 3B1.2 cmt. n.5. The district court's determination of a defendant's offense role is a question of fact we review only for clear error. De Varon, 175 F.3d at 938. The court "is not required to make any specific findings other than the ultimate determination of the defendant's role in the offense." Id. at 940. The defendant, as proponent of the downward adjustment, bears the burden of establishing his minor role by a preponderance of the evidence. De Varon, 175 F.3d at 939.

Under De Varon the district court's determination is informed by a two-part analysis of the defendant's conduct. See id. at 940–45. First, the court measures "the defendant's role against the relevant conduct for which [he] was held accountable at sentencing." Id. at 945. Where the relevant conduct attributed to a defendant is identical to his actual conduct, he cannot prove that he is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which he was a minor participant but for which he was not held accountable. Id. at 941. Thus, "when a drug courier's relevant conduct is limited to [his] own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs." Id. at 942–43. The first prong of the De Varon analysis is often dispositive of the issue. See id. at 945.

In considering the second prong, the district court may measure the defendant's culpability as compared to other participants in the crime. Id. at 944. However, the court may only consider those who also participated in the same relevant conduct. Id. "The conduct of participants in any larger criminal conspiracy is irrelevant." Id. Even if a defendant's role is "less than that of other participants" engaged in the same conduct," he might not be entitled to a reduction because, in some cases, there are no "minor or minimal participants." Id.

18

The district court did not clearly err in refusing a minor-role reduction, because the record demonstrates that Volcy's role in the offense was identical to the relevant conduct for which he was held accountable at sentencing and comparable to the role of Baptiste in the same conduct. See De Varon, 175 F.3d at 941–44. Therefore, Volcy's reliance on his relatively small role in the broader criminal enterprise is to no avail. See id. The court calculated Volcy's offense level based on only the amount of marijuana found in the truck when he was arrested, not the much larger amount attributed to the conspiracy as a whole. Volcy fails to show how he was less culpable than anyone else in the relevant conduct of smuggling that load of marijuana. Both Volcy and Baptiste rode with the shipment all the way from its origin in Arizona, and they took turns driving. Both men took the stand and denied knowing anything about the marijuana in the truck, and the jury believed neither of them. Accordingly, this is a situation where there are no "minor or minimal" participants, id. at 944, and we affirm Volcy's sentence.

## VIII.

We note sua sponte that the amended judgments against Baptiste and Volcy each contain two clerical errors. As to Count 1, the jury found both defendants responsible for 100 kilograms or more of marijuana, but the judgments incorrectly

19

state that it was 1,000 kilograms or more.  As to Count 3, the judgments indicate both defendants were found guilty of violating 21 U.S.C. § 846, the conspiracy statute, but Count 3 was not charged as a conspiracy.  These mistakes did not appear in the presentence reports, and the district court made no error in calculating the sentencing ranges under the guidelines.  Nevertheless, we vacate and remand to the district court for the limited purpose of correcting the errors in Baptiste's and Volcy's judgments.  See United States v. Massey, 443 F.3d 814, 822 (11th Cir. 2006).

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**